587 A.2d 879

**John David STONER and Simsun Greco–Stoner, Appellants,**

v.

**TOWNSHIP OF LOWER MERION, Board of Commissioners of Lower Merion Township, et al., Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided Feb. 28, 1991.

258

John David Stoner, Bala Cynwyd, for appellants.

Thomas L. Kelly, Media, for appellees.

Before CRAIG, President Judge, and BYER, J., and CRUMLISH, Jr., Senior Judge.

CRAIG, President Judge.

The Stoners, appellants here, are landowners in Lower Merion Township who are pursuing a claim that their application for the subdivision of a residentially zoned parcel, into two single-family dwelling lots, complied in full with the township's ordinance requirements, so that the township's board of commissioners violated a nondiscretionary duty in refusing the subdivision approval.

Within thirty days after the township's April 18, 1989 rejection of the subdivision application, the landowners filed an action in the Court of Common Pleas of Montgomery County, presenting the following counts:

I. Mandamus to obtain approval of the application and damages for interference with contract;

II. Peremptory partial judgment in mandamus for application approval alone;

III. Mandamus claim under 42 Pa.C.S. § 8303 for damages resulting from violation of a nondiscretionary duty;

IV. Land use appeal, pleaded as an alternative remedy to mandamus; and

V. Claim for compensation for unconstitutional temporary taking of property, under United States Supreme Court decisions.

By two orders of June 5, 1990, the common pleas court sustained preliminary objections by the township and intervening neighbors, and dismissed all of the mandamus and

damages counts, leaving only the land use appeal, Count IV. The foundation of the trial court's rationale was that mandamus is no longer an available remedy with respect to municipal land use decisions. Therefore the trial court, along with dismissing the mandamus counts, also dismissed the damage claims on the theory that only the land use appeal alternative remained as an available remedy under the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as reenacted and amended* by Act of December 21, 1988, P.L. 1329, 53 P.S. §§ 10101–11202.

However, because the MPC expressly retains the mandamus remedy, as approved by the Pennsylvania Supreme Court, the trial court erred by negating mandamus and the claims related to that remedy. Accordingly, this court will reverse the order in part, and will remand the case for consideration of peremptory partial judgment in mandamus for approval of the subdivision application, and also for further proceedings with respect to the Count III damage claim authorized in mandamus.

Because of the fundamental nature of the threshold question of the availability of the mandamus remedy when a land use application is clearly in compliance with ordinance requirements, this opinion will first deal with those related aspects, before proceeding to the claims for damages.

### Compliance Status of the Application and the Availability of Mandamus

█ Mandamus continues to be available as a remedy where entitlement to issuance of a land use approval is clear. In concluding that MPC § 1001–A, 53 P.S. § 11001–A, makes a land use appeal the exclusive remedy under MPC Article IX, the trial court overlooked MPC § 910.1, reiterated in the MPC by the 1988 amendment and therefore applicable to this case, which provides as follows:

Section 910.1 Applicability of Judicial Remedies.—Nothing contained in this article shall be construed to deny the appellant the right to proceed directly to court where

appropriate, pursuant to the Pennsylvania Rules of Civil Procedure No. 1091 (relating to action in mandamus). The 1968 MPC reenactment and amendment therefore reflected the continuing effectiveness of the Pennsylvania Supreme Court's ruling in *Lindy Homes, Inc. v. Sabatini,* 499 Pa. 478, 453 A.2d 972 (1982), where the Supreme Court declined to

> discard mandamus in favor of protracted administrative appeals, where entitlement to issuance of land use permits is *clear* ....

499 Pa. at 482, 453 A.2d at 974 (emphasis in original). This court, in *Township of Ridley v. Belk,* 76 Pa.Commonwealth Ct. 315, 463 A.2d 1249 (1983), followed *Lindy Homes* in a land use matter, by allowing the mandamus remedy for the obtaining of a building permit where the proposal complied with all requirements in effect at the time of the application, including grading regulations.

In this case, the landowners are *not* seeking to invalidate any zoning or subdivision requirement of Lower Merion Township; therefore the doctrine of *Unger v. Township of Hampton,* 437 Pa. 399, 263 A.2d 385 (1970), negating mandamus for validity challenges, is wholly inapplicable here.

The landowners here have consistently taken the position that their subdivision application, as submitted, complies fully with all pertinent subdivision and zoning requirements. We therefore turn to considering whether or not such compliance exists. Indeed, if the right of the landowners to approval is clear, then the prerequisite for peremptory judgment, as requested in Count II, would be fulfilled. Pa.R.C.P. No. 1098.

The factual aspects of the compliance issue appear to be not subject to dispute because the subdivision plan in the application speaks for itself concerning the proposed location and dimensions. *See* Addendum A to this opinion (Exhibit B-7, RR 33(a)).

The landowners' subdivision application is what often is called a request for a "simple" subdivision, that is, the

dividing of a residential parcel into two lots, so as to permit a second single-family dwelling to be erected. In Lower Merion's R3 Residence District, the landowners own a parcel fronting on Bryn Mawr Avenue in Bala Cynwyd, with a uniform width of 150 feet. On the southeasterly half of the parcel is erected the landowners' present residence; the northwesterly half is unimproved. The total uniform depth of the parcel is 200 feet, measured from the center line of Bryn Mawr Avenue, which is 50 feet wide; therefore, the uniform depth of the parcel from the street line to the rear line is 175 feet.

The subdivision request consists of a proposal to identify the southeasterly half as Lot No. 1 and create a new lot, Lot No. 2, consisting of the northwesterly half of the parcel. Thus, the two proposed lots would be identical rectangles, each one 75 feet wide and 175 feet in depth, measured from the street line. Each lot would have an area of 13,125 square feet, not counting any portion of the lot within street lines. Hence both lots would comply with the zoning requirements in Township Code § 155–28, which requires a lot area of 10,000 square feet or more, and a lot width of 70 feet.

Why, then, did the township reject the application?

The first reason given in the April 19, 1989 decision of the board of commissioners is that the depth of the proposed lots would contravene Township Code § 135–35, which reads:

Section 135–35. Lots.

A. Depth and side lines. Lots excessively deep in relation to width or lots excessively irregular in shape shall not be permitted unless reasonably dictated by the topography of the land or other natural or man-made features. A proportion of two and one-half (2½ in depth to one (1) in width is generally regarded as a proper maximum. Wherever practicable, the side lines of a lot shall be at right angles or radial to the right-of-way lines. Any portion of a lot not permitted to be included in the required lot area as provided in Section 155–128 of the

Township Code shall be disregarded in determining compliance with the standards created by this subsection. The reference in the last sentence to Township Code § 155–128 relates to the Code definition of "lot area" as including only the property "between the rear property line and the nearest street line." Therefore, the portion of the fee ownership *within* street lines is, quite understandably and logically, *not* to be counted in determining the regulated dimensions of lots.

■ These lots, being regular rectangles, certainly did not violate § 135–35A by being "excessively irregular in shape...." The township claimed only that they were "excessively deep in relation to width" as allegedly prohibited by that section. However, in making that determination, the township, contrary to its own ordinance definition, treated each lot as measuring 200 feet by 75 feet, by including the area within the street lines, to the center line of the street. That ratio of depth to width is 2.66 to 1, and therefore exceeds 2½ to 1, using the incorrect 200–foot dimension for the depth. Patently, the correct depth measurement, from the street line, is 175 feet, and the proportion of that depth to the 75–foot width is 2.33 to 1, clearly in compliance with the 2.5–to–1 proportion "generally regarded as a proper maximum" in the express words of § 135–35.

■ Secondly, the township commissioners declared that the 13,125 square foot lot area was "inharmonious with the surrounding neighborhood," where the board's decision contends, the average net lot area is 19,840 square feet. From that comparison, the township board further concluded that any house constructed on the proposed new lot could not be as large as other houses in the area. As authority for this general standard, the board cited only Township Code § 135–1B, part of the statement of purposes which declares the land use regulations to have been adopted to promote development which is "harmonious" as well as orderly, efficient and integrated. Of course, when the lot area complies with the specific lot area standard of 10,000 square feet spelled out in Township Code § 155–28A, the township

cannot, under a vague concern about "inharmonious" development, ignore the objective requirement legislatively adopted for the district in question.

■ This court has consistently refused to permit municipal bodies to ignore their own specific requirements by resort to general language. In *Goodman v. Board of Commissioners of Township of South Whitehall*, 49 Pa.Commonwealth Ct. 35, 411 A.2d 838 (1980), this court declined to uphold a subdivision denial based upon concerns about harmonious development, stating that, if municipalities could reject subdivisions by substituting vague concerns about harmonious development in place of their own specific standards,

> then there would be no point to the judicial doctrine that a subdivision plan which complies with applicable regulations must be approved. *See Gulf Oil Corp. v. Warminster Township Board of Supervisors*, 22 Pa.Commonwealth Ct. 63, 348 A.2d 485 (1975).

49 Pa.Commonwealth Ct. at 42, 411 A.2d at 841. As in *Goodman*, we cannot uphold ad hoc subdivision rulings effectively amending specific requirements, which would be equivalent to letting the township "hold in reserve unpublished requirements capable of general application for occasional use." *County Builders, Inc. v. Lower Providence Township*, 5 Pa.Commonwealth Ct. 1, 287 A.2d 849 (1972).

■ Thirdly, the township board sought to justify rejection of the subdivision application by citing the absence of runoff and erosion control calculations allegedly required by Township Code § 135–17C(10). However, that provision and the erosion control section 121–5B apply only whenever a developer proposes to make changes in grade in the subdivision. Because this application proposes no grade change, the provision for runoff and erosion control calculations is plainly inapplicable, for preliminary plan purposes.

■ Finally, the township board sought to rest disapproval of the creation of a second lot upon the surprising theory that, to insure a driveway sight distance, this subdivision

would require "removal of a very significant street tree which the Township Arborist finds to be in good health." The town fathers stated that "the tree is part of a line of street trees which contributes to the character of the neighborhood." In relation to that attempt to refuse a subdivision proposal, complying in other respects, because of the existence of a single tree, this township board relied upon Township Code § 135–24D(1), which calls upon subdivision plans to be designed to preserve natural features, including "large trees standing alone or in groves" and "street shade trees and specimen trees...."

However, at present all the landowners seek is approval of lot dimensions; the sale of a separate lot can certainly be accomplished without removing any particular tree. Even if we assume that removal of the particular tree will become unavoidable to preserve a driveway sight distance, the township Code specifically declares in § 135–25 that, where the board of commissioners decide that "such removal is unavoidable, the applicant shall install trees in such location and of such size, variety and quantity as the Board of Commissioners shall direct." Thus, if the removal of a tree becomes unavoidable, then the applicant will merely be required to make an appropriate substitution.

In conclusion, therefore, on the face of the record, the proposed subdivision clearly complies with all ordinance requirements; none of the township's reasons for rejection are sustainable as a matter of law.

The trial court, instead of examining the pleadings, the application and plan, and the Township Code, in order to determine if the landowners' proposal was in compliance, merely assumed that there was noncompliance because the township board had stated the foregoing insufficient reasons for the rejection.

■ Under *Lindy Homes*, as recognized by MPC § 910.1, the mandamus remedy is entirely appropriate here. There is no basis for rejecting it summarily, as the trial court did, on the ground that it was "misjoined" with a land use

appeal. Pa.R.C.P. No. 1020(a), reflecting the modern departure from hypertechnical pleading rules, allows various causes of action to be joined in one proceeding, and Pa. R.C.P. No. 1020(c) allows pleading in the alternative, thus expressly permitting the precaution taken by landowners' counsel here, who elected to include a timely land use appeal purely in the alternative, rather than to rest solely upon the mandamus remedy. Indeed, the Judicial Code expressly allows mandamus and an appeal to be treated interchangeably by a court, so that the remedy does not depend upon a matter of mere form. *See* 42 Pa.C.S. § 708.

Moreover, because mandamus is appropriate here, where compliance is clear, the peremptory mandamus rule is available, as sought to be invoked by the landowners' Count II. That rule, Pa.R.C.P. No. 1098, provides that

> at any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear, but the judgment may be opened upon cause shown....

Treating the landowners' Count II as a motion for peremptory partial judgment in mandamus, our order will remand this case for the trial court to consider if the preliminary application in fact does present the dimensions shown on the proposed preliminary plan and, if so, to grant peremptory partial judgment in mandamus commanding the township to issue preliminary plan approval and to process the final plan application when submitted.

Although the present record appears to indicate no factual dispute with respect to the matter of preliminary plan compliance, the trial court thus far has been able to consider only the township's preliminary objections and hence should be afforded an opportunity to act upon the peremptory judgment application in accordance with the law as stated in this opinion.

### Damages for Interference with Contract

■ The trial court correctly sustained preliminary objections and dismissed the landowners' claims for damages for

interference with contract, included in Counts I and III, because there is no allegation of any intent to harm the landowners by deliberate actions against the landowners' alleged agreement to sell Lot No. 2 when approved. *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979); *Vintage Homes, Inc. v. Levin,* 382 Pa.Superior Ct. 146, 554 A.2d 989 (1989).

### Damages in Mandamus

As we conclude above, mandamus is a proper remedy in this case, resulting in the land use appeal Count IV becoming unnecessary as a precautionary alternative and therefore superfluous. In mandamus, damages are available as part of a final judgment, under 42 Pa.C.S. § 8303, which provides:

> A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal.

The township contends that the township board did not fail or refuse to perform their duty *to take action upon the application.* The landowners contend that, because (as we hold above) the application is in full compliance with the Township Code, the duty of the township board was *to grant approval,* which the board refused to do.

 There is no doubt that mandamus damages are available under the statute whenever a public agency fails to perform a nondiscretionary duty to take action on a matter, i.e., to make a decision. However, the township's contention amounts to a reasonable claim that a public agency and its members should not be exposed to mandamus damages for failure to make a correct interpretation. However, this court has held that the mandamus remedy and mandamus damages are applicable when a failure to perform legally mandated ministerial duties results from an erroneous interpretation of the law. In *Simmons v. Cohen,*

111 Pa.Commonwealth Ct. 267, 534 A.2d 140 (1987), this court stated that in the event of

a failure by the respondents to perform legally mandated ministerial duties based on an erroneous interpretation of the law, then mandamus will lie to compel the performance of such duties. *Gorton v. Civil Service Commission*, 35 Pa.Commonwealth Ct. 319, 385 A.2d 1026 (1978). In such a case, the principle of official immunity would not be available to shield respondents from liability for damages under section 8303....

111 Pa.Commonwealth Ct. at 288, 534 A.2d at 150. The availability of the mandamus remedy under *Lindy Homes*, to compel the issuance of a land use approval when it is clearly due, necessarily indicates that the availability of mandamus thus goes beyond its use in a situation where a public agency has declined to act or make a decision. Where the entitlement to a permit is clear, as here, then the situation is such that no interpretation is involved, and the duty to issue the requested permit or approval is a nondiscretionary one.

Moreover, as this court stated in *Simmons*, as quoted above, official immunity is not a defense.

However, the cases have also made clear the point that damages recoverable under 42 Pa.C.S. § 8303 are not plenary. Damages recoverable in mandamus are those incidental to the specific relief being sought. *Kane v. Stucker*, 159 Pa.Superior Ct. 466, 48 A.2d 162 (1946). For example, where mandamus is issued to compel the reinstatement of a public employee in employment, the damages have regularly been confined to those arising from the absence of employment over the period, i.e., the loss of salary or net loss of income. *Langan v. School District of City of Pittston*, 335 Pa. 395, 6 A.2d 772 (1939).

Accordingly, in this case, any damages available to the landowners as a result of the township's wrongful withholding of approval must be confined to those incidental to the specific relief available in mandamus. *See Bethel*

*Park Municipal Council v. Simmons Park Properties, Inc.,* 68 Pa.Commonwealth Ct. 12, 15, 448 A.2d 661, 662 (1982); *School District of Pittsburgh v. City of Pittsburgh,* 23 Pa.Commonwealth Ct. 405, 416, 352 A.2d 223, 229 (1976).

The Count I damages claim, based upon unlawful interference with contract, is clearly beyond that scope, and and therefore no such loss of bargain, arising in a separate transaction, is recoverable.

With respect to the Count III mandamus damages claim, the case will be remanded for the taking of evidence related to any damages suffered by the landowners as an incident of the delay in receiving the preliminary plan approval wrongfully withheld by the township, but not including consequential damages or damages arising in connection with transactions or potential transactions with other parties.

### Compensation Claimed for a Temporary Taking of Land

Finally, the landowners cite *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), for the proposition that the Fifth and Fourteenth Amendments to the United States Constitution require compensation for that temporary period that a landowner is deprived of the use of land before reaching a final judicial determination that a land use regulation constitutes a taking of the property. That doctrine is an application of the doctrine of inverse or de facto condemnation, predicated on the proposition that a taking may occur without formal eminent domain proceedings and that temporary takings which deny the use of property for a limited period are not actually different in kind from permanent takings for which the constitution requires compensation.

The United States Supreme Court thus concluded that the ultimate invalidation of an unlawful ordinance or regulation can be a constitutionally insufficient remedy where a land-

owner suffers loss of use during the period before the invalidation takes effect.

With respect to a claim that a municipal ordinance conclusively prevented the lawful extraction of coal and enjoyment of a coal estate, this court has indicated that there could be a compensable taking with respect to the period during which the unlawful restraint was in effect, citing *First Evangelical Lutheran Church. McClimans v. Shenango Township*, 107 Pa.Commonwealth Ct. 542, 558, 529 A.2d 562, 570 (1987).

■ However, the constitutional doctrine which thus promises the possibility of compensation for loss of use of land, during a period of temporary taking, relates only to a taking effected by legislation or an adopted rule of continuing effect—namely, a statute or ordinance or regulation. Both *First English Evangelical Lutheran Church* and *McClimans* involved the adoption and implementation of ordinances which effectuated or threatened a taking of all value existent in real estate.

There is no decision which applies temporary taking compensation to a wrongful withholding of approval under an ordinance which, as here, clearly allows the reasonable use of land and does not render it useless.

In the present case, the landowners, by seeking to be governed by the provisions of the Township Code applicable to their subdivision, through an overturning of the township board's refusal, are actually attesting to the nonconfiscatory nature of the general rule of continuing application which the township here has legislatively adopted.

The unavailability of temporary-taking compensation for the township board's wrongful action, refusing to grant the approval warranted under their own ordinance, is particularly appropriate when, as noted above, the Pennsylvania Judicial Code provides a specific remedy for damages flowing from the breach of the nondiscretionary duty. With respect to both remedies, the measure of damages is the

same: loss of use of the premises during the period in question.

Hence there is neither any need nor any authority to provide a duplicate damages remedy in the type of case presented here.

Accordingly, the trial court was clearly justified in dismissing the temporary-taking compensation claim in Count V of the complaint.

## Conclusion

Our order here will reverse the trial court's sustaining of preliminary objections with respect to Count I, Count II and Count III. We affirm the sustaining of preliminary objections with respect to the claim for interference with contract and as to Count V. This court will remand the case with a direction that the trial court consider the request for partial peremptory judgment in mandamus in accordance with the law as stated herein, and with a direction that the trial court, pursuant to the filing of answers to the Count I, II and III pleadings, shall try the claim for damages under 42 Pa.C.S. § 8303, confined to damages suffered, if any, from the loss of use of Lot No. 2 during the period that the township withheld preliminary plan approval.

This court specifically rejects the landowners' request that the trial judge, whose decision is under appeal here, be disqualified with respect to further proceedings. The record reveals no evidence of judicial bias.

## ORDER

NOW, February 28, 1991, the trial court's sustaining of preliminary objections with respect to Count I, Count II and Count III is reversed; the sustaining of preliminary objections with respect to the claim for interference with contract and as to Count V is affirmed; and this case is remanded with a direction (1) that the trial court promptly proceed, in accordance with the foregoing opinion, to consideration and action upon the Count II request for perempto-

ry partial judgment in mandamus, seeking an order that the township shall grant approval of the preliminary plan and shall proceed with the processing of final subdivision plan when presented, and with a direction (2) that the trial court, pursuant to the filing of answers to the Count I, II and III pleadings, try the Count III claim for damages under 42 Pa.C.S. § 8303, confined to damages suffered, if any, from the loss of use of Lot No. 2 during the period that the township withheld preliminary plan approval.

Jurisdiction relinquished.

CRUMLISH, Jr., Senior Judge, files concurring opinion.

## ADDENDUM A.

CRUMLISH, Jr., Senior Judge, concurring.

I concur in the majority's decision and order, including its reversal of the trial court's order dismissing the Stoners' mandamus actions.

However, I write separately to emphasize what the majority recognizes, *majority*, pp. 268–270, as the township's reasonable position. That is, mandamus should not expose

township officials to damages when those officials incorrectly interpret a zoning order and deny a subdivision application.

Mandamus lies to compel the performance of ministerial acts, which admit of no judgment or discretion. *Lhormer v. Bowen*, 410 Pa. 508, 188 A.2d 747 (1963). It is appropriate to compel the issuance of a permit where "the issuance thereof is no more than a ministerial act." *Id.*, 410 Pa. at 514, 188 A.2d at 749–750.

The township's deliberations on the merits of the subdivision application exceed the scope of mere ministerial acts. Those deliberations require the exercise of *some* judgment, no matter how misguided or erroneous.

Mandamus should issue to compel action when a municipal officer or body *fails to act*, "not to direct the exercise of judgment or discretion in a particular way." *Pennsylvania Dental Association v. Pennsylvania Insurance Department*, 512 Pa. 217, 228, 516 A.2d 647, 652 (1987) (emphasis added).

Having pled mandamus, the Stoners should be permitted to prove their averments, and thus establish their right to that remedy, since it is no doubt available under *Lindy Homes*. Thus, the township's preliminary objections as to the mandamus counts should not have been granted.

However, it is for the trial court, not this Court, to inquire into whether the application clearly complies with the ordinance and to pass on the merits of the Township's reasons for rejecting the Stoners' application.

Accordingly, I would, in reversing the trial court's ruling on the preliminary objections, simply reinstate the mandamus counts.