IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas L. Walters and Nancy L. :
Walters, :
     Appellants :
       : No. 1310 C.D. 2014
    v.  :
       : Argued: March 9, 2015
Zoning Hearing Board of the City of :
Easton and Pegasus Tower Co., Ltd. :


BEFORE: HONORABLE BERNARD L. McGINLEY, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE McCULLOUGH[1]      FILED: October 8, 2015


    Thomas L. Walters and Nancy L. Walters (Appellants) appeal from the June 30, 2014 order of the Court of Common Pleas of Northampton County (trial court), holding that Appellants lacked standing to appeal the land-use decision of the Zoning Hearing Board of the City of Easton (ZHB). We reverse and remand for further proceedings.

    Pegasus Tower Co., Ltd. (Pegasus) filed an application with the ZHB, seeking to replace a preexisting monopole with a 195-foot high monopole, containing eighteen communication panels, on land next to Appellants' property. In its application, Pegasus requested, under the applicable ordinance, to convert one non-conforming use to another non-conforming use and an attendant variance.

---

[1] This opinion was reassigned to the author on August 3, 2015.

On November 19, 2012, the ZHB conducted a hearing. Thomas Walters (Walters) appeared at the ZHB hearing, and the ZHB acknowledged that he is the adjoining property owner to the east of the monopole. Walters was sworn in to testify, and the ZHB explicitly referred to him as a "party" without objection by Pegasus. When a ZHB member disclosed information pertaining to a potential conflict of interest, Walters stated that he had "no objection" to that member's participation. (Reproduced Record (R.R.) at 27a, 29a-30a, 33a; ZHB Finding of Fact (F.F.) at No. 5.)

At the beginning of the hearing, Walters stated that the new monopole "will open up a large area in the woods where there will be a direct view of the new tower into the residential properties, which [is the Walters'] property, plus properties immediately to our east." (R.R. at 35a.)

Walters and Pegasus' attorney then presented to the ZHB a joint stipulation. This stipulation states that if the ZHB were to grant Pegasus' application, Pegasus would provide additional screening near Appellants' property in order to help obstruct the view of the new monopole. (R.R. at 36a-37a.)

In support of its application, Pegasus first called Mario Calabretta, a professional engineer, to testify. When posed with a question regarding the physical presence of the current monopole, Calabretta stated that "the irony is that . . . those that live closest to the tower actually are probably least impacted in terms of the view [of] the tower itself, because of . . . intervening structures such as trees or houses." (R.R. at 57a.) Calabretta added that "[o]ddly enough, the further away you are from [the monopole] the better you see it, but then the smaller it is as well. So it's kind of a disproportionate impact. It's almost counterintuitive, frankly. But it just happens to be that way, which is great in many ways." (R.R. at 57a-58a.)

Pegasus next called James Shelton, director of radio frequency engineering at V-Comm, to testify. In general, Shelton testified that the design and

2

operational capacity of the new monopole was feasible and in compliance with governmental standards and that the proposed location is "highly desirable" due to the area's topography. (R.R. at 71a-83a.)

Pegasus then rested its case. After Pegasus' attorney made brief argument, the following exchange occurred between the ZHB and Walters:

> THE CHAIRMAN: Okay. There were **some people that were sworn in.** If you'd like to provide any additional testimony or comments or questions, come to the microphone, state your name and address for the record, and any comments.
>
> MR. WALTERS: Well, I'll just – I can't resist making some comments, since I think **about thirteen months ago we were all here and went through several hours of this.**
>
> [Calabretta] made a statement relating to the fact that the closer you get to the tower the less prominent it is and the less you would see it. And I would like to submit . . . .
>
> This is a photograph of standing in my sideyard between myself and [an adjacent] property, and simply looking west. **And what you'll see is a tower that surpasses the entire tree line right next to my property.**
>
> **So I would suggest that somehow this does not have an effect on neighboring property owners is really not a fair statement at all.** And of course this photograph was taken, as was the photographs that were submitted to you, before the storms of last Halloween and the storm of several weeks ago, when **a whole series of trees and the woods have come down since then.**
>
> So, this is – but this shows how prominent this tower is now, how prominent the new tower would be. **So I would like to submit this as an exhibit, and I'll provide a copy to counsel**. . . .
>
> THE CHAIRMAN: You can bring that to the secretary, to have that marked.

MR. WALTERS:        Sure.

[Counsel for the ZHB]:    For the record, we'll mark that Exhibit O-1.

(R.R. at 86a-87a) (emphasis supplied).

Other citizens testified as to their views of the monopole and the hearing concluded. (R.R. at 88a-91a.)

By decision dated December 17, 2012, the ZHB granted Pegasus its requested relief, concluding, among other things, that the monopole will not have an adverse effect on or alter the essential character of the neighborhood. As part of its decision, the ZHB accepted and incorporated the stipulation between Appellants and Pegasus that Pegasus install and maintain additional screening near Appellants' property. (R.R. at 111a-13a.)

Appellants filed a notice of appeal to the trial court.[2] In response, Pegasus filed an answer, seeking to dismiss the appeal for lack of standing, asserting that Appellants failed to sufficiently object and/or participate during the ZHB proceedings. (R.R. at 115a-21a.)

By decision dated June 30, 2014, the trial court denied Appellants' appeal, concluding that they lacked standing to appeal because they did not object to Pegasus' application before the ZHB. The trial court reasoned:

> [Appellants] attended the hearing and listened to Pegasus' entire presentation without raising an objection. In fact, [Appellants] most significant involvement in the hearing was to enter onto the record an *agreement* with Pegasus. The only other participation from [Appellants] concerned their statements regarding the proposed tower's visibility

---

[2] Appellants raised a total of eight issues, one of which contended that the ZHB abused its discretion in not concluding that the proposed use would have negative impacts on neighboring lands. (R.R. at 115a-18a.)

4

from adjacent properties and the offering into evidence of some photographs concerning the same. Nevertheless, it should be noted that [Appellants] themselves characterized the statements as "making some comments" rather than making an actual objection.

In sum, [Appellants] did not appear as parties and did not oppose the application in any manner. They did not cross-examine a witness. They did not offer any argument against the application. They did not object to any testimony or evidence presented. . . . In fact, a reading of the transcript from the hearing leaves the [c]ourt with the impression that [Appellants] were supportive of Pegasus' application, provided the additional screening was installed as per the agreement and stipulation they had reached with Pegasus.

(Trial court op. at 5-6) (emphasis in original).

On appeal to this Court,[3] Walters argues that his participation in the ZHB proceedings conferred him with standing to appeal to the trial court. We agree.

"A person who wishes to contest a zoning approval can initiate an appeal or challenge if he is a 'person aggrieved.'" *In re Appeal of Broad Mountain Development Co.*, 17 A.3d 434, 440 (Pa. Cmwlth. 2011) (citation omitted). "To be a 'party aggrieved' so as to have standing to appeal a zoning board decision, a person must (1) have actively participated as a party in the proceedings before the zoning board; and (2) be directly and adversely affected by the zoning board's decision." *Lower Allen Citizens Action Group, Inc. v. Lower Allen Township Zoning Hearing Board*, 500 A.2d 1253, 1257 (Pa. Cmwlth. 1985). An owner of property within close proximity to the subject property is presumed to have been directly and adversely affected by the zoning decision. *Laughman v. Zoning Hearing Board of Newberry Township*, 964 A.2d 19, 22 (Pa. Cmwlth. 2009).

___

[3] When the trial court does not take additional evidence, our scope of review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Morrell v. Zoning Hearing Board*, 17 A.3d 972, 975 n.4 (Pa. Cmwlth. 2011).

5

**Analysis**

Because Walters is an adjoining property owner it is presumed he was directly and adversely affected by the zoning decision and therefore meets the second prong of standing. The issue in this case is whether Walters sufficiently participated in the ZHB proceedings.

In *Lower Allen Citizens Action Group*, members of an unincorporated association filed a challenge to a township's ordinance and a quarry's proposed expansion to its quarry operations. On appeal to this Court, the township filed a motion to quash, contending that the unincorporated association, which was later incorporated as a non-profit corporation, lacked standing to appeal. We noted that the unincorporated association "did enter an appearance before the [ZHB] and actively participated in the proceedings as a party." 500 A.2d at 1257. Accepting the quarry's concession that the unincorporated association would have standing to appeal if it remained an unincorporated association, this Court ultimately concluded that the change in business structure did not divest the now non-profit corporation of standing to appeal the ZHB's decision.

Here, Walters appeared, testified, and submitted a photograph to dispute Calabretta's statement that the tower has the least amount of impact, in terms of physical presence, on those that live closest to it. Walters also testified that Calabretta's opinion was "not a fair statement at all." (R.R. at 87a.)

Further, in *Orie v. Zoning Hearing Board of the Borough of Beaver*, 767 A.2d 623 (Pa. Cmwlth. 2001) (*en banc*), a library applied for variances to waive the zoning ordinance's provisions for rear yard setbacks, allowable lot coverage, and off-street parking requirements. Before the scheduled hearing, the adjoining property owners submitted a letter to the ZHB, "expressing their concerns with the extension of the existing library building to within ten feet of their property and the off-street

6

parking requirements." *Id.* at 624. Specifically, in their letter the property owners "advocated a smaller addition and/or other alternatives to the proposed addition" in order to "maintain the greenery and trees" between the properties and "the esthetics or character of the neighborhood." *Id.* One of the property owners attended the ensuing hearing, but did not speak or otherwise participate.

After the ZHB granted the library's requests for variances, the property owners appealed. The trial court dismissed the appeal, determining that the property owners lacked standing because they failed to oppose the grant of the variances. On appeal, this Court reversed. We concluded in *Orie* that the property owners' letter, in and of itself, demonstrated that the property owners sufficiently participated in opposition to the library's requests for variances and, therefore, possessed standing to appeal. Notably, there was nothing in *Orie* to indicate or suggest that the property owners specifically requested that the variances be denied, presumably because such could readily be inferred from the content of their letter, and a majority of this Court concluded that the property owners had standing despite the dissent's argument that the letter "preserves no issues for appellate review." *Id.* at 625 (dissenting opinion by Leadbetter, J., joined by Doyle, J.).

Here, contrary to the trial court's determination, Walters actively participated in the proceedings before the ZHB in an opposing posture. More particularly, Walters introduced testimony and photographic evidence that: directly contradicted or rebutted Calabretta's testimony; was offered to prove that the monopole has an adverse effect on neighboring property; and specifically relates to Pegasus' burden to prove, under the ordinance, that the monopole will not have a negative impact on or alter the essential character of the neighborhood. Walters expressly argued that Calabretta's opinion regarding the physical presence of the monopole "is really not a fair statement at all," (R.R. at 87a), which naturally requests the ZHB to find Calabretta's testimony incredible on this point.

7

Per *Orie*, it is not necessary for Walters to formally request that Pegasus' request for a variance be denied in order to express his opposition to Pegasus' application. *Cf.* section 708(a) of the Judicial Code, 42 Pa.C.S. §708(a) ("No objection to a governmental determination shall be defeated by reason of error in the form of the objection"). Rather, Walters' introduction of rebuttal evidence, testimony, and argument is sufficient to apprise all those concerned that he officially contested Pegasus' monopole. Indeed, by its very definition, "rebuttal evidence" is used "to contradict the opponent's evidence" and to "disprove facts given in evidence by the adverse party." *Feingold v. Southeastern Pennsylvania Transportation Authority*, 488 A.2d 284, 290 (Pa. Super. 1985), *aff'd*, 517 A.2d 1270 (Pa. 1986). Standing alone, Walters' evidentiary presentation and argument demonstrated his opposition to the monopole, and, as in *Orie*, had the practical effect of requesting that Pegasus' requests for land-use relief be denied.

Following our decision in *Orie*, we conclude that the method and manner of Walters' form of opposition constitutes adequate participation before the ZHB hearing so as to confer standing. The substance and adversarial nature of the property owners' letter in *Orie* cannot be meaningfully distinguished from Walters' rebuttal evidence and, hence, *Orie*'s holding and result must apply here.[4]

Moreover, we disagree with the trial court that the proposed stipulation between Walters and Pegasus establishes that Walters supports Pegasus and the construction of the new monopole. Significantly, at no point did Walters

---

[4] In its opinion, the trial court attempted to analogize this case to *Leoni v. Whitpain Township Zoning Hearing Board*, 709 A.2d 999 (Pa. Cmwlth. 1998). (*See* Trial court op. at 4-5.) However, in *Leoni* the adjoining property owners neither appeared before the zoning board nor did they raise an objection to the applicant's request for a variance. As explained by this Court in *Orie*, *Leoni* stands for the proposition that adjoining property owners lack standing when they fail "to participate in the proceedings *in any way.*" *Orie*, 767 A.2d at 625 (emphasis in original). Here, by contrast, we conclude that Appellants sufficiently participated and objected.

affirmatively express that he approves the monopole or that it is beneficial to the neighborhood. Instead, a close reading of the transcript makes clear that Walters entered into the stipulation conditionally and as an alternative, precautionary measure if, and only if, the ZHB would decide to grant Pegasus relief. *See* R.R. at 34a ("And [Pegasus] would submit . . . to the [ZHB] for its consideration as an additional condition, **if the [ZHB] approves the application**.") (emphasis added); R.R. at 36a (Walters: "And we jointly would request that stipulated condition be included in . . . the application . . . **should the [ZHB] grant the relief requested**.") (emphasis added).

In general, Pennsylvania law encourages parties to advance alternative theories and positions, *see Stoner v.Township of Lower Merion*, 587 A.2d 879, 881 (Pa. Cmwlth. 1991); *Lugo v. Farmer's Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. 2009), and we conclude that this is the most appropriate way to view the stipulation. That is, Walters objected to and opposed the monopole, and, in the alternative, requested that screening be placed in the event the ZHB approved the monopole.

Finally, we cannot agree with the trial court's cursory determination that Walters was not a "party" before the ZHB. The record demonstrates that the ZHB did not require a party to enter a formal appearance in writing on forms provided by the ZHB, and the ZHB did not announce at the hearing official procedures to be followed for one to attain party status. *See Grant v. Zoning Hearing Board of the Township of Penn*, 776 A.2d 356, 359 (Pa. Cmwlth. 2001) (concluding that a landowner was officially a "party" where the landowner participated in the proceedings and the ZHB "does not have an established policy that would allow those in attendance at the hearing to declare their status as parties to the hearing."). Instead, Walters was sworn in to testify; the ZHB explicitly referred to him as a "party" without objection by Pegasus; and Walters presented rebuttal evidence. Consequently, on this record, Walters acted in a party capacity during the ZHB

9

proceedings and can appeal the ZHB's decision. *See Thompson v. Zoning Hearing Board of Horsham Township*, 963 A.2d 622, 625 n.5 (Pa Cmwlth. 2009) ("[W]hen a person is permitted to appear in opposition to an application to a zoning hearing board and permitted to cross-examine witnesses and present evidence, he or she is a party to those proceedings.").

For the foregoing reasons, we conclude that Walters possesses standing to appeal because he sufficiently participated during the ZHB proceedings and acquired the status of a party. Accordingly, we reverse the trial court's order and remand for the trial court to entertain Appellants' appeal.[5]

                                    _____
                                    PATRICIA A. McCULLOUGH, Judge

---

[5] This, of course, does not mean that Appellants properly raised and preserved all the issues that they seek to assert on appeal to the trial court. Nonetheless, the concept of waiver is divorced from the concept of standing and the two must not be intermingled to make an objector's standing dependent on issue preservation.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas L. Walters and Nancy L. Walters, :
:
Appellants :
:
v. :
:
Zoning Hearing Board of the City of :
Easton and Pegasus Tower Co., Ltd. :

No. 1310 C.D. 2014

## *ORDER*

AND NOW, this 8th day of October, 2015, the June 30, 2014 order of the Court of Common Pleas of Northampton County (trial court) is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Thomas L. Walters and | : | |
| Nancy L. Walters, | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Hearing Board | : | |
| of the City of Easton | : | No. 1310 C.D. 2014 |
| and Pegasus Tower Co., Ltd. | : | Argued: March 9, 2015 |

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

DISSENTING OPINION
BY JUDGE McGINLEY                          FILED:  October 8, 2015

I respectfully dissent to the Majority's conclusion that "Walters possesses standing to appeal because he sufficiently participated during the ZHB proceedings and acquired the status of a party." Slip Opinion at 10.  Although the majority makes a compelling case in favor of standing, I believe that the specific facts of this record do not support such a determination.[1]

---

[1] Essentially, Walters asserted that his standing was based upon the following: 1) Walters was present at the hearing and was sworn in as a witness; 2) Walters provided testimony at the beginning of the hearing and at the conclusion of Pegasus' witnesses' testimony; 3) Walters stated that the stipulation concerning the screening should be made a condition of the ZHB's approval; 4) Walters introduced a photograph (Exhibit O-1) depicting the current condition of his property which was received and made part of the record; and 5) the ZHB clearly recognized that Walters had a direct interest in the case. See Amended Brief of Thomas L. Walters and Nancy Walters at 13.

Pegasus responded: 1) Walters' participation at the hearing was not to object to Pegasus' application but was limited to "making some comments"; 2) Walters mischaracterized his participation as "testimony" when in fact, the record reveals that Walters' statements were mere comments offered to the ZHB for its consideration; 3) Walters failed to raise any objection to the zoning application either by letter to the ZHB prior to the hearing or by active participation at the

**(Footnote Continued on Next Page)**

Walters appeared before the ZHB with Pegasus' attorney, Michael S. Grab, and announced:

> And as Mr. Grab has indicated, this is a different submission[2] and includes the removal of the presently-existing lattice tower maintained by Service Electric.
>
> As a result the . . . planned removal of that tower, and the outbuildings which are located at the base of it, it will open up a large area in the woods where there will be a direct view of the new tower into the residential properties, which are our property, plus properties immediately to our east.
>
> After I was able to secure a copy of the plan, the parties have agreed to enter into a stipulating condition that provides for the placement of additional screening in that particular area. And also, provides for the developer to maintain that screening, as per the specific stipulated condition that <u>we've</u> prepared.
>
> And with your approval, what I'd like to do is submit a copy to the Chairperson, and also to the solicitor. And <u>we jointly</u> would request that stipulated condition be included in . . . both the application, and should the Zoning Hearing Board grant the relief requested tonight. (Emphasis added.)

---

**(Continued…)**
hearing; and 4) to the contrary, Walters explicitly expressed his support of Pegasus' application by proffering to the ZHB a stipulated condition entered into with Pegasus for its approval which required the additional landscape screening. <u>See</u> Brief for Pegasus Tower Co., LTD at 12-13 and 15.

[2] "Previously Pegasus had applied to the zoning board for a variance to construct a tower on this parcel of land nearby the existing tower. (R. 28a). Thomas Walters testified at that hearing and the zoning board denied the application." Amended Brief of Thomas L. Walters and Nancy L. Walters at 5. At the prior hearing, Walters appeared with legal counsel "to strenuously object to the prior application brought by Pegasus . . . ." Brief of Zoning Hearing Board of the City of Easton at 9.

Hearing Transcript (H.T.), November 19, 2012 at 14-15; Reproduced Record (R.R.) at 35a-36a.

Additionally, Walters again addressed the ZHB as a witness and offered the following "comments":

> Well, . . . I can't resist making some comments since I think about thirteen months ago we were all here and went through several hours of this.
>
> Mario [Calabretta] made a statement relating to the fact that the closer you get to the tower the less prominent it is and the less you would see it. And I would like to submit - - and Mike, I'll have to get a copy of this, because I didn't plan to submit this tonight.
>
> This is a photograph of standing in my side yard . . . [a]nd what you'll see is a tower that surpasses the entire tree line right next to my property.
>
> . . . .
>
> And of course this photograph was taken, as was the photographs that were submitted to you, before the storms of last Halloween and the storm of several weeks ago, when a whole series of trees and the woods have come down since then.
>
> So, this . . . shows how prominent this tower is now, how prominent the new tower would be.
>
> So I would like to submit this as an exhibit, and I'll provide a copy to counsel. And those are the only comments that I have. (Emphasis added.)

H.T. at 65-66; R.R. at 86a-87a.

Here, Walters was notified of the hearing and appeared at the hearing with Pegasus' attorney. Walters joined in the Application filed by Pegasus contingent on the condition that the Stipulated Agreement, prepared jointly with

BLM-3

Pegasus, would be incorporated in Pegasus' Application for consideration by the ZHB. The ZHB did just that:

> . . . [D]ocuments . . . relative to screening and, in that removal of the existing tower will 'open' a view to the proposed monopole to/from his property, <u>the Appellant [Pegasus] has agreed to install and maintain additional screening so as to block that view to the greatest extent possible, which documentation/agreement he requested be attached as a condition/stipulation to any approval the Board [ZHB] may grant</u> . . . . (Emphasis added.)

Zoning Board's Notice of Decision, December 17, 2012, Finding of Fact (F.F.) No. 8 at 2.

Again, the record clearly established that Walters never raised any objection to Pegasus' Application at the hearing even though he had ample opportunity to do so. Walters' participation at the hearing never exceeded that of a "mere witness." See <u>Naimoli v. Zoning Hearing Board of Chester et al.</u>, 425 A.2d 36, 38 (Pa. Cmwlth. 1981). In essence, Walters' participation at the hearing can only be characterized as a friend and not as a foe.

I believe that the common pleas court got it right when it determined that Walters lacked standing.[3]  I would affirm.

_____
BERNARD L. McGINLEY, Judge

_____

[3] The common pleas court noted that "[w]ithin the context of zoning decision, substantive [standing] concerns whether a party is 'aggrieved' by a particular decision . . . . It would seem likely that Appellants [Walters] indeed have substantive standing in this matter. However, regardless of their aggrieved status in this case, at issue is Appellants' [Walters'] lack of procedural standing." Opinion of the Common Pleas Court, June 30, 2014, at 3. (Citation omitted.)