**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| MFW WINE CO., LLC, A6 WINE COMPANY, AND GECC2 LLC D/B/A BLOOMSDAY CAFE, | : | No. 75 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated May 27, |
| Appellees | : | 2022 at No. 251 MD 2020 |
| | : | |
| | : | ARGUED:  November 30, 2023 |
| v. | : | |
| | : | |
| | : | |
| PENNSYLVANIA LIQUOR CONTROL | : | |
| BOARD, | : | |
| | : | |
| Appellant | : | |
| LOG CABIN PROPERTY, LP, | : | No. 76 MAP 2022 |
| INDIVIDUALLY AND ON BEHALF OF ALL | : | |
| THOSE SIMILARLY SITUATED, | : | Appeal from the Order of the |
| | : | Commonwealth Court dated May 27, |
| Appellee | : | 2022 at No. 292 MD 2020 |
| | : | |
| | : | ARGUED:  November 30, 2023 |
| v. | : | |
| | : | |
| | : | |
| PENNSYLVANIA LIQUOR CONTROL | : | |
| BOARD, | : | |
| | : | |
| Appellant | : | |

**<u>OPINION</u>**

**JUSTICE DONOHUE**                                 **DECIDED:  July 2, 2024**

In this appeal, we consider whether the Pennsylvania Liquor Control Board ("PLCB") is a "person" within the meaning of Section 8303 of the Judicial Code[1] and, if so, whether sovereign immunity bars mandamus damages sought pursuant to that provision.

In *MFW Wine Co., LLC v. PLCB*, the Commonwealth Court issued a declaratory judgment that PLCB failed to perform its statutory duty to implement procedures to facilitate the direct shipment of special orders to customers.[2] The court also issued a writ of mandamus compelling PLCB to comply with that duty. After prevailing in the declaratory judgment and mandamus actions in *MFW I*, Wine Vendors applied for mandamus damages pursuant to Section 8303 as well as for costs, interest, and attorneys' fees. Based on Wine Vendors' success in *MFW I*, Log Cabin brought an action for mandamus damages under Section 8303.[3]

PLCB defended the claims by asserting that it was not a "person" within the meaning of Section 8303 and that, even if it was a person, sovereign immunity[4] barred mandamus damages because it is an agency of the Commonwealth. It also challenged any prospective award of attorneys' fees for the underlying mandamus action as barred by sovereign immunity for the same reasons. The Commonwealth Court rejected those

---

[1] 42 Pa.C.S. § 8303 ("Section 8303") provides: "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal."

[2] *MFW Wine Co., LLC v. PLCB*, 231 A.3d 50 (Pa. Commw. 2020), *affirmed* 247 A.3d 1008 (Pa. 2021) (per curiam) (hereinafter, "*MFW I*"). The plaintiffs, now appellees, are MFW Wine Co., LLC ("MFW"), A6 Wine Company ("A6"), and GECC2 LLC d/b/a Bloomsday Café ("Bloomsday") (collectively, "Wine Vendors"). Appellee at 76 MAP 2022 is Log Cabin Property, LP ("Log Cabin").

[3] *See Log Cabin Prop., LP v. Pennsylvania Liquor Control Bd.*, 276 A.3d 862, 867 (Pa. Commw. 2022) ("Log Cabin").

[4] PLCB claims immunity under the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8528.

defenses in opinions issued in *MFW Wine Co., LLC v. Pennsylvania Liquor Control Board*, 276 A.3d 1225 (Pa. Commw. 2022) ("*MFW II*") and *Log Cabin*.

PLCB appeals both decisions as collateral orders under Pa.R.A.P. 313, a characterization challenged by both Wine Vendors and Log Cabin.[5]  Because these appeals involve identical issues, we resolve them in one opinion.  First, we conclude that the orders are appealable.  On the merits, we conclude that PLCB is a "person" within the meaning of Section 8303 and that sovereign immunity does not bar mandamus damages available under that provision.  Additionally, in the appeal from *MFW II*, we hold that attorneys' fees awarded in relation Section 8303 are also not barred by sovereign immunity.  Thus, we affirm the holdings of the Commonwealth Court in *MFW II* and *Log Cabin*, and remand for further proceeding consistent with this opinion.

## Background

### *MFW I*

In 2016, the General Assembly amended Section 305(a) of the Liquor Code to allow for the direct purchase and shipment of alcohol products not otherwise available from PLCB through its Fine Wine and Good Spirits stores ("PLCB Stores").  47 P.S. § 3-305(a) ("Section 305(a)").  Prior to that amendment, PLCB customers submitted special orders to PLCB for products not typically available from PLCB Stores, PLCB procured the products from licensed importers and vendors, and customers then picked up the products from PLCB stores and paid PLCB's handling fees.  *See MFW I*, 231 A.3d at 52.

Section 305(a) prohibited PLCB from charging handling fees for special orders "delivered directly to a customer" under the new system, and PLCB was to implement the

---

[5]  Under Rule 313, an "appeal may be taken as of right from a collateral order of a trial court or other government unit."  Pa.R.A.P. 313(a).  Rule 313 defines a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

new system for processing these special orders by January 1, 2017. *MFW I*, 231 A.3d at 52-53. However, under subsequent amendments to the Fiscal Code, the General Assembly extended that deadline, stating: "Notwithstanding the provisions of [S]ection 305 . . . the [PLCB] may implement a procedure for processing special orders which do not come to rest at a store by June 1, 2017." 72 P.S. § 1799.2-E. PLCB did not implement a procedure for processing special orders by that date, nor for some time thereafter, inaction which provided the impetus for the lawsuit filed by Wine Vendors in *MFW I*.[6] Instead, PLCB maintained that "it had no mandatory duty to allow these direct shipments" under Section 305(a) "in light of" Section 1799.2-E, which PLCB interpreted "as placing within PLCB the discretion to allow such direct shipments only if and when [it] decide[d] to implement a processing procedure." *MFW I*, 231 A.3d at 53.

Wine Vendors initiated an action against PLCB in the Commonwealth Court's original jurisdiction seeking a declaratory judgment that they had "a statutory right to the direct shipment of special[-]order liquor or alcohol to customers from licensed importers or licensed vendors" and seeking mandamus relief to enforce that right. *Id*. at 52. The Commonwealth Court granted relief on both fronts.[7] First, the court held that the clear and unambiguous language of both amendments, read in pari materia, provided that although "PLCB has discretion on what procedure it adopts to implement these transactions, it does not have the discretion to prevent them." *Id*. at 57. Second, under its mandamus power, the Commonwealth Court directed PLCB to implement a direct-

---

[6] The PLCB's delay in implementing a procedure for processing special orders was further exacerbated when PLCB Stores were temporarily closed during the COVID-19 pandemic by order of then-Governor Tom Wolf.

[7] "The [c]ourt will grant Petitioners summary relief on Count I (Mandamus) and Count III (Declaratory Judgment) of their Amended Complaint." *Id*. at 57. The court denied relief as to the remaining counts because the relief afforded provided "a fulsome remedy on the merits." *Id*.

shipment-of-special-orders process "without unreasonable delay." *Id*. at 58. PLCB filed

a direct appeal from that decision, which this Court affirmed by per curiam order dated

March 25, 2021. *MFW Wine Co., LLC v. Pennsylvania Liquor Control Bd.*, 247 A.3d 1008

(Pa. 2021).

## *MFW II*

Wine Vendors filed an application in the Commonwealth Court for relief seeking

damages, costs, interest, and attorneys' fees.[8] PLCB filed an answer asserting that Wine

Vendors were not entitled to damages because PLCB was a government entity entitled

to the protection of sovereign immunity (barring both damages and any related attorneys'

fees), and that even if the General Assembly had waived PLCB's sovereign immunity,

PLCB was not a "person" within the meaning of the mandamus relief created by Section

8303.[9] Alternatively, PLCB argued that if neither defense applied, it was entitled to

discovery and a hearing to assess Wine Vendors' damages. PLCB conceded that Wine

Vendors were entitled to costs under 42 Pa.C.S. § 1726,[10] but that any interest was

---

[8] *See* Petitioner's Application for Relief Seeking Damages, Costs, Interest, and Attorneys' Fees, 5/25/2021 ("Wine Vendors' Application").

[9] *See* PLCB's Answer to Application for Relief Seeking Damages, Cost, Interest and Attorneys' Fees, 6/11/2021.

[10] Section 1726 provides, in pertinent part:

> **§ 1726. Establishment of taxable costs**
>
> **(a) Standards for costs.--**The governing authority shall prescribe by general rule the standards governing the imposition and taxation of costs, including the items which constitute taxable costs, the litigants who shall bear such costs, and the discretion vested in the courts to modify the amount and responsibility for costs in specific matters. All system and related personnel shall be bound by such general rules. In prescribing such general rules, the governing authority shall be guided by the following considerations, among others:

(continued…)

contingent upon an award of damages. *Id*. Finally, PLCB argued that even if not barred by sovereign immunity, Wine Vendors were not entitled to attorneys' fees under Section 2503 because they had not shown, as required by that section, that PLCB had engaged in dilatory, obdurate or vexatious conduct during its defense of Wine Vendors' lawsuit, and that an award for attorneys' fees related to their appeal from *MFW I* should have been sought in this Court. *Id*. at 14-20.

### Log Cabin

Five days after *MFW I* was decided, Log Cabin filed a complaint

> alleging that it and those similarly situated have been unlawfully compelled to pick up and pay a handling fee to PLCB on every bottle of [special order] liquor or wine it purchased since June 1, 2017 (allowing PLCB to collect millions of dollars in handling fees) and, pursuant to Section 8303 of the Judicial Code … and *MFW I*, they are entitled to recover damages in the form of all handling fees paid and pick-up expenses incurred due to PLCB's inaction since June 1, 2017, plus costs, prejudgment interest, and attorneys' fees.

---

> (1) Attorney's fees are not an item of taxable costs except to the extent authorized by section 2503 (relating to right of participants to receive counsel fees).
> (2) The prevailing party should recover his costs from the unsuccessful litigant except where the:
>
> > (i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by the fund.
> > (ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law.
> > (iii) Application of the rule would work substantial injustice.
>
> (3) The imposition of actual costs or a multiple thereof may be used as a penalty for violation of general rules or rules of court.

42 Pa.C.S. § 1726.

*Log Cabin*, 276 A.3d at 868.[11]

After PLCB appealed *MFW I*, Log Cabin's action was stayed by joint application until this Court affirmed *MFW I*. PLCB then filed a preliminary objection to Log Cabin's complaint, alleging that Log Cabin

> failed to state a viable cause of action because: (1) PLCB is entitled to sovereign immunity and cannot be held liable for damages under Section 8303 of the Judicial Code; (2) PLCB is not a "person" within the meaning of Section 8303 of the Judicial Code and, thus, is not liable for mandamus damages thereunder; and (3) mandamus damages are only available under Section 8303 of the Judicial Code to those that bring and successfully obtain mandamus relief, which Log Cabin has not.

*Log Cabin*, 276 A.3d at 868. Log Cabin filed a timely response, "arguing: (1) sovereign immunity does not apply; (2) PLCB is a "person" under Section 8303 of the Judicial Code; and (3) Log Cabin need not have been a party to *MFW I* to recover mandamus damages." *Id*.

The Commonwealth Court ordered PLCB's Preliminary Objections to Log Cabin to be listed for argument consecutive to argument on Wine Vendors' Application. *Log Cabin*, 276 A.3d at 868. Following those arguments, the Commonwealth Court issued closely divided decisions in *Log Cabin* and *MFW II*.

## Commonwealth Court Decisions

Judge Covey wrote for the same 3-2 majority in *MFW II* and *Log Cabin* and was joined by Judges Cannon and McCullough. Judge Wojcik authored the dissenting opinions in both cases and was joined by President Judge Cohn Jubelirer.

### *MFW II*

In *MFW II*, The Commonwealth Court first addressed whether PLCB is a "person" within the meaning of Section 8303. *MFW II*, 276 A.3d at 1232-35. After recognizing the

---

[11] Log Cabin simultaneously filed an application to consolidate its case with the matter in *MFW I*, which was denied by the Commonwealth Court. *Id.*

term is not defined within the Judicial Code, it turned to the definition set forth in Section 1991 of the Statutory Construction Act of 1972 ("SCA"). The SCA defines "person" broadly as including "a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person." 1 Pa.C.S. § 1991 (defining "person"). Further, the introduction to Section 1991 indicates as follows: "The following words and phrases, when used in any statute finally enacted on or after September 1, 1937, unless the context clearly indicates otherwise, shall have the meanings given to them in this section[.]" 1 Pa.C.S. § 1991.

The court observed that the SCA definition of "person" excluded only the Commonwealth, not its agencies, as contrasted with the broader term used in Section 8501 of the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8527.[12] Furthermore, Section 1991 of the SCA defines "Commonwealth" narrowly as the "Commonwealth of Pennsylvania" despite the distinction between the Commonwealth and government entities that is found in the SCA definition of "person." Relying on *Finn v. Rendell*, 990 A.2d 100, 105 (Pa. Commw. 2010), the court observed that the Commonwealth is an entity distinct from its agencies. *See MFW II*, 276 A.3d at 1233. Given that distinction, the Commonwealth Court determined that the General Assembly could have reasonably intended to permit mandamus damages under Section 8303 against agencies of the Commonwealth while simultaneously shielding the Commonwealth itself from liability. *MFW II*, 276 A.3d at 1233-34.

The *MFW II* Court next examined *Commonwealth v. Runion*, 662 A.2d 617 (Pa. 1995), where this Court overturned a holding that the Commonwealth was a "person"

---

[12] The Sovereign Immunity Act defines a "Commonwealth party" as a "Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501 (defining "Commonwealth party").

within the definition of a "victim" under the Crimes Code for purposes of determining whether the Department of Public Welfare was a victim entitled to restitution from criminal defendants. The *Runion* Court turned to the definition of "person" in the SCA, concluding that its "plain and ordinary meaning" was that "governmental agencies of this Commonwealth are excluded from the definition." *Runion*, 662 A.2d at 619. In doing so the *Runion* Court applied strict interpretation principles to the definition of "victim" as it was contained in a penal provision. *Id.*[13]

The *MFW II* Court rejected PLCB's reliance on *Runion* because 1) *Runion* was superseded by subsequent legislative action; 2) it had strictly construed a penal statute, whereas Section 8303 is subject to a more liberal construction to effectuate its purpose and to promote justice;[14] 3) *Runion* did not involve a Commonwealth agency's defiance of a statutory mandate; and 4) *Runion* mistakenly stated that an 1992 amendment to Section 1991 of the SCA had excluded government entities of the Commonwealth from its definition of "person," when in fact that amendment added "government entities" to the definition while simultaneously excluding "the Commonwealth." *MFW II*, 276 A.3d at 1234 (citing Section 2 of the Act of Dec. 18, 1992, P.L. 1333 ("1992 SCA Amendment")).

Next, the Commonwealth Court examined the context in which Section 8303 was enacted, concluding that it was specifically intended to impose mandamus damages against a Commonwealth agency, as such a remedy was available under its predecessor, the Mandamus Act of 1893. *Id.* Decisions by the Commonwealth Court had recognized

---

[13] While it did not explicitly identify the definition of "victim" under the restitution statute as ambiguous, the *Runion* Court implied as much when it stated that the statute "fails to specify or provide any guidance as to whether the General Assembly intended to include governmental agencies of this Commonwealth within the definition of a 'victim.'" *Runion*, 662 A.2d at 619.

[14] *Compare* 1 Pa.C.S. § 1928(b)(1) (requiring strict construction of penal statutes), *with* 1 Pa.C.S. § 1928(c) (requiring all categories of statutes not listed in Section 1928(b) to be "liberally construed to effect their objects and to promote justice").

that the Section 8303 permitted recovery against the Commonwealth as far back as 1991. *Id*. at 1235 (citing *Stoner v. Twp. of Lower Merion*, 587 A.2d 879, 885 (Pa. Commw. 1991) ("*Stoner*") (stating "[t]here is no doubt that mandamus damages are available under [Section 8303] whenever a public agency fails to perform a nondiscretionary duty")). The court again noted that the 1992 SCA Amendment added government entities to the definition of person, "thereby exposing the Commonwealth and its agencies to liability under Section 8303" as Section 8303 was already in effect before the amendment. *Id*. Finally, the Commonwealth Court cited two of its prior decisions that had interpreted Section 8303 as permitting damages against Commonwealth agencies. *Id*. (citing *Richard Allen Preparatory Charter Sch. v. Dep't of Educ.*, 161 A.3d 415 (Pa. Commw. 2017) (en banc), *aff'd*, 185 A.3d 984 (Pa. 2018), *KIPP Phila. Charter Sch. v. Dep't of Educ.*, 161 A.3d 430 (Pa. Commw. 2017) (en banc), *aff'd sub nom.*, *Richard Allen Preparatory Charter Sch. v. Dep't of Educ.*, 185 A.3d 984 (Pa. 2018)). Based on the above rationale, the court concluded that "in the context presented here, PLCB is a person subject to Section 8303 of the Judicial Code." *Id.*

The court next considered Wine Vendors' claims for mandamus damages, costs, interest, and attorneys' fees. *Id*. at 1235-41. Addressing PLCB's claim that sovereign immunity barred recovery of mandamus damages under Section 8303, the court first cited intermediate appellate court decisions holding that sovereign immunity did not bar mandamus actions generally,[15] and cases explicitly permitting mandamus damages against Commonwealth entities.[16] *MFW II*, 276 A.3d at 1236. The court recognized, however, that damages recoverable under mandamus against a government entity must

---

[15] *See, e.g., Maute v. Frank*, 657 A.2d 985, 986 (Pa. Super. 1995) ("Actions in mandamus are not subject to the defense of sovereign immunity.").

[16] *See, e.g., Stoner*, 587 A.2d at 885; *see also Maurice A. Nernberg & Assocs. v. Coyne*, 920 A.2d 967, 970 (Pa. Commw. 2007) (citing *Stoner*).

clearly relate to the "defendant's failure to perform a mandatory ministerial function." *Id*. at 1237 (quoting *Sch. Dist. of Pittsburgh v. City of Pittsburgh*, 352 A.2d 223, 229 (Pa. Commw. 1976) ("*City of Pittsburgh*")). Furthermore, in *Stoner*, the Commonwealth Court had held that mandamus damages do not include "consequential damages or damages arising in connection with transactions or potential transactions with other parties." *Id*. (quoting *Stoner*, 587 A.2d at 885). Subject to the limitations set forth in *City of Pittsburgh* and *Stoner*, the Commonwealth Court determined that Wine Vendors' claim for lost profits due to PLCB's failure to perform its mandatory duty were recoverable, with interest, "to the extent" Wine Vendors "can prove them." *Id*. Finally, the Commonwealth Court held that while attorneys' fees were not obtainable pursuant to Section 8303, they were available under 42 Pa.C.S. § 2503[17] because PLCB's "initial inaction" was "arbitrary," and

---

[17]  Section 2503 provides, in pertinent part:

**§ 2503. Right of participants to receive counsel fees**

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

\* \* \* \*

(6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

\* \* \* \*

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S. § 2503.

"its ongoing refusal to implement a procedure to process direct shipment [of special orders] and continuing to assess handling fees is dilatory and obdurate." *Id*. at 1238-41.

The Commonwealth Court granted Wine Vendors' Application subject to PLCB's right to discovery and/or a hearing limited to damages, interest, and attorneys' fees. *Id*.

### MFW II Dissent

In his dissent, Judge Wojcik would have found that the parties' interpretations of the meaning of "person" are both reasonable and, therefore, that "person" is ambiguous when applied to Section 8303 as to whether it included PLCB. *MFW II*, 276 A.3d at 1242-43 (Wojcik, J., dissenting) (joined by Cohn Jubelirer, P.J.). Applying principles of statutory interpretation to resolve the ambiguity, the dissent looked at the history of the doctrine of sovereign immunity and concluded that its purpose "has always been 'to protect the fiscal security of the government by shielding the Commonwealth and its agents' from financial liability." *Id*. at 1243 (quoting *Dorsey v. Redman*, 96 A.3d 332, 340 (Pa. 2014) (emphasis omitted). In that regard, the dissent observed that the shield of sovereign immunity originally developed as a common law doctrine and is the general rule that can only be bypassed when specifically authorized by the General Assembly as is now codified in 1 Pa.C.S. § 2310 and in the Sovereign Immunity Act.[18] *Id*. at 1243-44.

Judge Wojcik next found that Section 8522 of the Sovereign Immunity Act is the exclusive location for the General Assembly's specific waivers of sovereign immunity, and that there is no waiver for mandamus damages under that provision. *Id.* at 1244. Additionally, the dissent found *Runion* instructive here because

> only a "person" may be liable for mandamus damages under Section 8303's clear terms, "governmental agencies of this Commonwealth" are not so liable. [*Runion*, 662 A.2d at 621].

---

[18] As discussed further herein, Section 2310 was a direct response to this Court's decision in *Mayle,* which "abolish[ed] the doctrine of sovereign immunity." *Mayle v. Pennsylvania Dep't of Highways*, 388 A.2d 709, 720 (Pa. 1978).

> PLCB is a governmental agency of the Commonwealth protected by sovereign immunity. Therefore, for purposes of Section 8303, PLCB is not a "person" liable for mandamus damages.

*Id.* at 1246.

Further, the dissent argued that the *MFW II* majority had overlooked that "statutes in derogation of sovereignty should be construed strictly in favor of the sovereign." *Id*. Applying strict construction principles to Section 8303, following *Runion*'s interpretation of "person" under the SCA, and given the absence of a specific waiver of sovereign immunity for mandamus damages in the Sovereign Immunity Act, the dissent would have determined that PLCB was not liable for mandamus damages under Section 8303.

### Log Cabin

As the procedural posture of *Log Cabin* concerned a ruling on preliminary objections in the nature of demurrer, PLCB challenged the legal sufficiency of the complaint and was required to show "with certainty that the law will not permit recovery," with any doubt to be resolved in favor of overruling the preliminary objections. *Log Cabin*, 276 A.3d at 869 (emphasis omitted) (quoting *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Commw. 2010)).

The *Log Cabin* Court first addressed PLCB's sovereign immunity claim, which was the same one it made in *MFW II*. *Id*. at 869-72. Log Cabin argued that PLCB acted outside of the scope of its official duties, that sovereign immunity did not apply to Section 8303, and that the "General Assembly has made it abundantly clear in other contexts that sovereign immunity does not permit a state agency to retain unlawfully collected funds." *Id*. at 869.

The court acknowledged the general rule that the Commonwealth, its agencies, and its individual officials and employees are immune from suits for damages. *Id*. at 870 (citing, inter alia, PA. CONST. art. I, § 11). It further recognized that "courts are not free to

circumvent the legislature's statutory immunity directives pertaining to the sovereign" except "where the General Assembly has authorized the suit." *Id*. (citations and brackets omitted). The court then discussed the history of sovereign immunity in Pennsylvania, observing that 1 Pa.C.S. § 2310 was the General Assembly's immediate response to *Mayle*'s abolition of sovereign immunity in 1978, and that Section 2310 was intended to "restore sovereign immunity where it formerly existed." *Id*. (quoting *Rank v. Balshy*, 475 A.2d 182, 185 (Pa. Commw. 1984), *aff'd*, 490 A.2d 415 (Pa. 1985)). However, the Commonwealth Court observed that it "does not appear that claims brought pursuant to Section 8303 of the Judicial Code or its now-repealed predecessor, the Mandamus Act of 1893[], ever required a waiver because those actions were never barred by sovereign immunity in the first place." *Id. at* 870-71 (footnote omitted). Thus, although the Sovereign Immunity Act states that no provision of Title 42 "shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310" except "as otherwise provided in this subchapter," 42 Pa.C.S. § 8521(a), the court determined that "Section 8303 of the Judicial Code has not before nor after" the Sovereign Immunity Act "been subject to sovereign immunity[,]" and that "implied repeals are disfavored" when "two statutes can be reconciled." *Log Cabin*, 276 A.3d at 872.[19]

Alternatively, the *Log Cabin* Court did not find the absence of a specific waiver for mandamus damages under the Sovereign Immunity Act to be relevant here if PLCB acted outside of its authority, as Section 2310 specifies that the Commonwealth "shall continue to enjoy sovereign immunity" while "its officials and employees [are] acting within the scope of their duties[.]" *Id*. at 872 (quoting 1 Pa.C.S. § 2310). The court concluded that

---

[19] Thus, the court suggested that PLCB is implicitly seeking the repeal of Section 8303 because, if sovereign immunity was not waived for purposes of that statute, it would have little discernable effect, as mandamus actions are most often filed against Commonwealth parties.

based on the above, and in light of *MFW I*'s holding that PLCB "violated a clear statutory mandate, Log Cabin's claim is not barred by sovereign immunity." *Id*.

The *Log Cabin* Court also rejected PLCB's claim that it was not a "person" within the meaning of Section 8303, applying nearly identical rationale to that expressed in *MFW II*. *Log Cabin*, 276 A.3d at 872-75.

Unique to *Log Cabin*, the Commonwealth Court addressed whether Log Cabin could recover damages under Section 8303 since it was not the successful mandamus petitioner in *MFW I*. The court noted that Log Cabin could still join *MFW I*'s class action or bring its own mandamus claim because, as PLCB conceded at oral argument before the Commonwealth Court, the PLCB had still not fulfilled its statutory duty at that time. *Id*. at 876-77. The *Log Cabin* Court concluded that, because PLCB is clearly "liable to licensed vendors, importers, and licensees for provable mandamus damages under Section 8303[,]" and "neither that provision nor any caselaw expressly preclude Log Cabin's claim, it does not appear with certainty that Log Cabin cannot recover damages from PLCB." *Id*. at 877.[20] Thus, the court overruled PLCB's preliminary objections.[21]

### Log Cabin Dissent

The dissent in *Log Cabin*, in its entirety, read as follows:

> I dissent. For the reasons set forth in my Dissenting Opinion filed in *MFW* [*I*], I do not agree that [PLCB] is a "person" subject to damages under Section 8303 of the Judicial Code, 42 Pa.C.S. § 8303. Therefore, unlike the Majority, I would sustain PLCB's preliminary objection in the nature of demurrer on the basis that Log Cabin[]'s claim is barred by sovereign immunity.

---

[20] This unique aspect of the *Log Cabin* decision is not before this Court and, thus, we will not address it further.

[21] To sustain preliminary objections, "it must **appear with certainty** that, upon the facts averred, the law will not permit recovery by the plaintiff." *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 449 (Pa. 1969) (emphasis added).

*Log Cabin*, 276 A.3d at 877 (Wojcik, J., dissenting) (joined by Cohn Jubelirer, P.J.).

## Issues

In the appeal from *MFW II*, PLCB raises one question for our review:

> Whether Section 8303 of the Judicial Code … creates an exception to sovereign immunity in actions seeking damages, costs, interest, and attorneys' fees against Commonwealth agencies?

PLCB's MFW Brief at 4.

In the appeal from *Log Cabin*, PLCB raises one similar, albeit narrower question for our review:

> Whether Section 8303 of the Judicial Code … creates an exception to sovereign immunity in actions seeking damages against Commonwealth agencies?

PLCB's Log Cabin Brief at 4.

Both questions incorporate an essential issue: whether PLCB is a "person" within the meaning of Section 8303. Before addressing these issues, we must decide whether the orders underlying these appeals are ripe for appeal.

### *Collateral Order Jurisdiction*

Wine Vendors and Log Cabin contend that *Log Cabin*'s and *MFW II*'s sovereign immunity rulings are not collateral orders under Pa.R.A.P. 313 and, therefore, not appealable as of right.

> As a general rule, "an appellate court's jurisdiction extends only to review of final orders." *Shearer v. Hafer*, … 177 A.3d 850, 855 ([Pa.] 2018); *see also* Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order of a ... trial court."). A final order is an order that "disposes of all claims and of all parties" or "is entered as a final order" pursuant to a determination of finality by a trial court or other government unit. Pa.R.A.P. 341(b)(1), (3). As we have previously stated, "[t]he final order rule reflects the long-held limitation on review by both federal and state appellate courts[,]" and "[c]onsidering issues only after a final order maintains distinctions between trial and appellate review, respects the traditional role of the trial judge, and promotes formality, completeness, and efficiency." *Shearer*, 177 A.3d at 855.

> Nonetheless, the collateral order doctrine, which has been
> codified in Rule 313, "permit[s] immediate appellate review of
> certain [non-final] collateral orders." *Id*. at 856; *see also Rae
> v. Pa. Funeral Dirs. Ass'n*, … 977 A.2d 1121, 1125 ([Pa.]
> 2009).

*J.C.D. v. A.L.R.*, 303 A.3d 425, 429–30 (Pa. 2023).

Under Rule 313, an "appeal may be taken as of right from a collateral order of a trial court or other government unit." Pa.R.A.P. 313(a). Rule 313 defines a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Thus, Rule 313 involves three elements: 1) the order is separable from and collateral to the underlying action; 2) the right involved is too important to be denied review; and 3) if review is postponed until final judgment, the claim will be lost. For the reasons that follow, we agree with PLCB that the orders in *Log Cabin* and *MFW II* are collateral orders within the meaning of Rule 313.

In *Brooks*, we held that the Commonwealth Court erred in quashing the notice of appeal from the denial of summary judgment on sovereign immunity grounds. In that case, Wanda Brooks alleged that she sustained an injury when she walked into an unmarked glass wall at a Family Court building in Philadelphia, and filed negligence claims against the building's architect, the City of Philadelphia, and the Family Court. *Brooks*, 259 A.3d at 361. The Family Court asserted in a new matter that it was immune from tort claims under the Sovereign Immunity Act and moved for summary judgment. *Id*. Brooks countered that the General Assembly had waived the Family Court's sovereign immunity under the real estate exception set forth in 42 Pa.C.S. § 8522(b)(4) (waiving sovereign immunity for injuries caused by dangerous conditions on properties owned or leased by Commonwealth agencies). *Id*. at 361-62. After the trial court denied the Family Court's motion for summary judgment, the family court appealed pursuant to Rule 313.

*Id*. at 362. However, the Commonwealth Court quashed the appeal on the basis that it did not meet all three elements under Rule 313; specifically, that the Family Court had failed to prove the third prong because its sovereign immunity defense would not be irreparably lost if review was postponed until final judgment. *Id*. at 364. We granted review to determine whether an order denying a summary judgment motion based on sovereign immunity is a collateral order that is appealable as-of-right under Rule 313. *Id*. at 365.

We applied Rule 313's three-prong test in *Brooks* to determine whether the summary judgment order denying the Family Court's sovereign immunity defense was a collateral order. As to whether the order was separable under the first prong, we considered whether the order was fully distinct from the underlying issues and resolvable without addressing the merits of the underlying dispute. *Id*. at 371. Agreeing with the Commonwealth Court, we held that the Family Court's sovereign immunity defense met the requirements of the first prong because the sovereign immunity issue was a pure legal question that did not require any analysis of the underlying negligence claim. *Id*. at 372.[22]

Under the second prong, we considered the importance of the sovereign immunity issue, which involves contemplation "of the importance of the right involved by weighing the interests that immediate appellate review would protect against the final judgment rule's interests in efficiency through avoiding piecemeal litigation." *Id*. We also required that the order must involve deeply rooted rights that go beyond the interests of parties involved in the particular dispute. *Id*. In that regard, we again agreed with the Commonwealth Court that the Family Court's sovereign immunity defense was "too

---

[22] Specifically, we found that the sovereign immunity "issue is a purely legal question that can be resolved by focusing on the [Sovereign Immunity] Act and does not necessitate an examination of the merits of Family Court's negligence claim" and that "sovereign immunity would provide the Family Court with an absolute defense … regardless of whether Brooks is able to prove negligence." *Brooks*, 259 A.3d at 372.

important" to evade immediate review because it was deeply rooted in public policy and secured by our constitution and statutes under PA. CONST. art. 1, § 11, and 1 Pa.C.S. § 2310. We also observed that a decision on the Family Court's immunity defense had implications for "each of our three branches of government." *Id*. We therefore held that Rule 313's second prong was satisfied because these interests outweighed any concerns for efficiency. *Id*.

Finally, under the third prong, we disagreed with the Commonwealth Court's determination that the Family Court's sovereign immunity defense would not be irreparably lost if the case continued to final judgment. The Commonwealth Court had found that because the Family Court could assert sovereign immunity on appeal from a final judgment, the issue could not be irreparably lost. *Id*. at 364-65. However, that order was contrary to the principle that sovereign immunity applies to the legal process itself, not just to final judgments. *Id*. at 372-73.[23] Thus, we concluded that the third Rule 313 prong was satisfied because "sovereign immunity protects government entities from a lawsuit itself, … a sovereign immunity defense is irreparably lost if appellate review of an adverse decision on sovereign immunity is postponed until after final judgment." *Id*. at 373.[24] Sovereign immunity, we held, is not only a "shield against damages." *Id*. at 375.

In the instant matter, Appellees have similarly challenged whether the rulings in *MFW II* and *Log Cabin* addressing PLCB's sovereign immunity defense are appealable as of right under Rule 313.

---

[23] *See* PA. CONST. art. 1, § 11 (requiring legislative authorization for "suits" against the Commonwealth); *and see* 1 Pa.C.S. § 2310 (continuing the Commonwealth's immunity "from suit" except when specifically waived).

[24] We also found this decision to be consistent with the public policy purpose of sovereign immunity—the protection of public coffers. The costs of litigation are not limited to the damages awarded because "litigation requires a governmental entity to expend taxpayer dollars on its defense and to divert employees' time from conducting government business." *Brooks*, 259 A.3d at 373.

Regarding the first Rule 313 prong, Appellees argue that the order denying PLCB's sovereign immunity claim is "not separable from the merits" because "PLCB conceded it was not immune from Appellees' underlying cause of action or the writ of mandamus the Commonwealth Court issued." Wine Vendors' Brief at 2. They also argue that sovereign immunity is intertwined with the calculation of damages under Section 8303, but they fail to justify that assertion. While PLCB did not contest sovereign immunity's inapplicability to mandamus actions, it vigorously disputed the availability of mandamus damages. Only after *MFW I* did Wine Vendors file their application for damages pursuant to Section 8303, at which time Log Cabin sought the same relief. PLCB maintains that while sovereign immunity does not apply to injunctive relief in a mandamus action, it does apply to actions for damages under Section 8303. Further, PLCB now maintains that is not a "person" under Section 8303 from whom such damages are recoverable.

We agree with PLCB that the issues before us are separable and distinct from the underlying action for damages based on the same rationale we expressed in *Brooks*. Here, whether Appellees can substantiate their Section 8303 damages, and in what amount, are wholly independent questions from whether PLCB is a "person" from whom such damages are recoverable under Section 8303 and whether such damages are barred by sovereign immunity. *Brooks* is not distinguishable. The issues are separable and distinct.

Second, under the second Rule 313 prong, Appellees assert this matter is not important because PLCB's sovereign immunity claim is "novel" in that PLCB seeks to "obtain a never-before-seen immunity after failing to comply with statutory mandates for six years." Wine Vendors' Brief at 3. However,

> a right is important if the interests that would go unprotected
> without immediate appeal are significant relative to the
> efficiency interests served by the final order rule. Additionally,
> the order must involve rights deeply rooted in public policy

going beyond the particular litigation at hand, and it is not sufficient that the issue is important to the particular parties involved.

*Blystone*, 119 A.3d at 312 (internal citations, quotation marks, and brackets omitted).

Here, Wine Vendors and Log Cabin presume an affirmative answer to a question before us in this appeal regarding whether PLCB's novel sovereign immunity claim lacks merit, but that question has no place in our analysis under Rule 313's second prong. In *Brooks*, we found that the right to a sovereign immunity defense is too important to evade review before final judgment. *Brooks*, 259 A.3d at 372. Furthermore, whether citizens can be made whole for damages incurred as a result of a government agency's failure to perform its statutory obligations is a matter of importance involving questions of public accountability that go well-beyond the individual litigants in this case.

Finally, Appellees argue that delay will not irreparably harm PLCB because PLCB already lost in the underlying mandamus and declaratory judgment actions, and that "[a]ll that remains is a damages calculation." Wine Vendors' Brief at 4. However, if sovereign immunity applies to bar damages against PLCB under Section 8303, or if Section 8303's definition of "person" does not encompass a Commonwealth agency, the failure to address those questions until after Section 8303 damages are awarded would result in discovery proceedings and a wholly unnecessary phase of litigation of indeterminate expense, undermining the public purpose of sovereign immunity.

Appellees downplay that burden by relying on our statement in *Brooks* that "the protections of immunity are irreparably lost when a party goes to trial." *Brooks*, 259 A.3d at 373. They argue that the trial phase has already occurred here—the litigation in *MFW I*—but for an assessment of damages. But in *Brooks*, we were applying a broader principle that "the protections of sovereign immunity are irreparably lost if a governmental entity **must litigate a case to final judgment** before it can obtain appellate review of an adverse ruling on its invocation of sovereign immunity." *Id*. (emphasis added). At best,

Appellees make a case that the loss of the benefits of sovereign immunity to PLCB are less than they were for the Family Court in *Brooks*, not that the loss is reparable.[25]  Here, there has been no final judgment on damages under Section 8303 and PLCB has invoked sovereign immunity as defense to mandamus damages.  Thus, *Brooks* is not distinguishable from the instant matter.  PLCB has demonstrated irreparability.

Because PLCB has satisfied all three prongs under Rule 313, we conclude that the matter in both appeals involves collateral orders appealable as of right.

### Parties' Arguments

#### PLCB

PLCB first contends that *MFW II* and *Log Cabin* conflict with the doctrine of sovereign immunity because, as an agency of the Commonwealth, it is entitled to sovereign immunity against claims for damages.[26]  PLCB stresses that any statutory exceptions concerning sovereign immunity have traditionally been strictly construed. PLCB's Brief at 15 (citing *Mullin v. Commonwealth, Dep't of Transp.*, 870 A.2d 773, 779 (Pa. 2005) ("Because of the clear intent to insulate the government from liability, the exceptions to sovereign immunity are to be strictly construed.")).  PLCB highlights that, in *Mullin*, we stated that the General Assembly enacted the Sovereign Immunity Act to "insulate the Commonwealth **and its agencies** from liability except in certain specified

---

[25]  For purposes of Rule 313, PLCB relies on *Brooks*' application of the principle that the doctrine of sovereign immunity prohibits lawsuits, not just recovery against a Commonwealth agency.  This is ironic given that PLCB simultaneously maintains a distinction between mandamus actions seeking injunctive relief and mandamus actions seeking damages when disputing Wine Vendors' and Log Cabin's assertion that PLCB waived its sovereign immunity defense by failing to assert it during the underlying *MFW I* litigation.

[26]  *See* PLCB's MFW Brief at 15 (citing PA. CONST. art. I, § 11, 1 Pa.C.S. § 2310); *see also* PLCB's Log Cabin Brief at 11-12 (same).  Because PLCB's briefs in both cases are substantially the same, we cite solely to its brief in the appeal from *MFW II*. We will specifically note when the briefs differ.

circumstances, so that state governmental revenues are not subject to unnecessary depletion." *Id*. at 15-16 (quoting *Mullin*, 870 A.2d at 779 (emphasis added)).

PLCB contends the Sovereign Immunity Act exclusively defines the circumstances under which Commonwealth parties may be sued in tort. *Id*. at 16 (citing 42 Pa.C.S. §§ 8501, 8521-28). It acknowledges that its sovereign immunity has been waived under Section 8522(b)(7) in matters not at issue here that involve the sale of alcohol to certain persons, however, it maintains that the General Assembly "has not otherwise waived PLCB's immunity except to the extent its actions fall within one of the eight other enumerated statutory exceptions[.]" *Id*.

By contrast, PLCB categorizes Section 8303 "as a general provision which does not specifically address or provide for the waiver of sovereign immunity" especially when strictly construed. *Id*. at 16-17. PLCB asserts that the Commonwealth Court failed to apply strict construction to Section 8303 when ascertaining the General Assembly's intent to waive sovereign immunity for mandamus damages. *Id*. at 17.

Relying primarily on *Runion*, PLCB criticizes the Commonwealth Court's finding that PLCB is a "person" under Section 8303 through the court's incorporation of the SCA definition. *Id*. As previously noted, in *Runion*, a criminal defendant challenged an award of restitution to the Department of Public Welfare under a prior version of 18 Pa.C.S. § 1106, which required restitution to be paid to a "victim." *Runion*, 662 A.2d at 619. Section 1106's definition of "victim" incorporated the term "person," and so the *Runion* Court looked to the SCA definition of "person" to resolve whether a government agency could be a "victim" for purposes of restitution. *Id*. *Runion* held that the Department of Public Welfare was not a person under the SCA definition, and therefore not a victim under Section 1106. *Runion*, 662 A.2d at 621.

The lower court here distinguished *Runion*, in part, because the restitution statute was subsequently amended to specifically include government agencies,[27] but PLCB contends that the amendment had no effect on *Runion*'s analysis of the SCA definition of "person" and that the SCA definition has not changed since *Runion* was decided. PLCB's Brief at 17-18. PLCB argues that the Commonwealth Court "cannot effectively ignore the prior precedent of [*Runion*] in order to reach the result it prefers." *Id*. at 18.

Next, PLCB asserts that *Meyer v. Community College of Beaver County*, 93 A.3d 806 (Pa. 2014) ("*Meyer II*"), provides further support for the proposition that the General Assembly did not intend to waive PLCB's sovereign immunity when it amended the SCA definition of "person" in 1992 to include Commonwealth agencies but not the Commonwealth. PLCB argues that in *Meyer II*

> a similar linguistic question which [a]ffected the scope of coverage under the Unfair Trade Practices and Consumer Protection Laws (UTPCPL). The UTPCPL defined a "person" as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any legal entities." 73 P.S. § 201-2(2). However, this Court ultimately held that a community college was not a "person" subject to liability under the UTPCPL. *See Meyer* [*II*], 93 A.3d at 808. It based its decision in part on the historical importance of sovereign and governmental immunity, and the unlikelihood that the General Assembly would use general language to define "person" so as to effectively waive immunity for government agencies.

*Id*. at 18-19.

Focusing on *MFW II*, PLCB next argues that Wine Vendors are not entitled to attorneys' fees because mandamus damages are "barred by sovereign immunity." PLCB's Brief at 19. Nonetheless, even if sovereign immunity did not apply to those

---

[27] "In 1995, and again in 1998, … the legislature rewrote Section 1106 to significantly strengthen and amplify the notion of restitution, and to expand the class of entities eligible for restitution." *Commonwealth v. Brown*, 981 A.2d 893, 899 (Pa. 2009).

damages, PLCB argues that Wine Vendors failed to demonstrate that attorneys' fees are warranted under the dilatory, obdurate, and vexatious standards set forth in 42 Pa.C.S. § 2503.[28]

### Wine Vendors

Wine Vendors assert that sovereign immunity has never applied to mandamus damages, and this is "obvious" because citizens must be made whole when the government violates their "clear legal rights." Wine Vendors' Brief at 18-19 (quoting *Chilli v. Sch. Dist. of City of McKeesport*, 6 A.2d 99, 99 (Pa. 1939) ("Mandamus … can only be obtained when there is a clear legal right in the relator and a positive duty of the defendant to be performed[.]")). Wine Vendors warn that, "[o]therwise, an agency could violate 'clear legal rights' with impunity." *Id*. at 19.

Wine Vendors contend that the ability to obtain mandamus damages against Commonwealth agencies dates back at least to the Mandamus Act of 1893, the predecessor to Section 8303.[29] *Id*. At that time,

> sovereign immunity was the common law and would remain so for another eighty-five years. But sovereign immunity did not apply to mandamus damages, which were expressly provided for by statute. This remains the case now, even after the General Assembly restored sovereign immunity by statute "where it formerly existed" before this Court abrogated common law sovereign immunity in 1978. *Balshy*, 475 A.2d at 185.

*Id*.

Wine Vendors further argue that the text of Section 8303 clearly undermines PLCB's sovereign immunity claim. *Id*. at 20. They contend that by the very nature of mandamus actions, Section 8303 logically applies to government agencies. *Id*. (citing

---

[28] In its final argument, PLCB oddly contends that Log Cabin is also not entitled to attorneys' fees, but the *Log Cabin* decision did not address attorneys' fees.

[29] *See* 42 Pa.C.S. § 8303 (Bar Association Comment).

*Stoner*, 587 A.2d at 885 (stating there "is no doubt that mandamus damages are available under [Section 8303] whenever a public agency fails to perform a nondiscretionary duty to take action on a matter")). Additionally, while PLCB "relies heavily on the Sovereign Immunity Act," Wine Vendors argue that PLCB's own description of the Act "betrays the weakness of its position and reflects a deeply flawed understanding of the doctrine" where PLCB admitted that the Sovereign Immunity Act defines when Commonwealth parties can be sued in "tort." *Id*. at 21 (citing PLCB's Brief at 16). Wine Vendors assert that sovereign immunity does not apply to a mandamus damages claim because they did not sue PLCB in tort. *Id*.

Furthermore, Wine Vendors argue that sovereign immunity has never barred mandamus damages. *Id*. at 22. Even after the General Assembly enacted the Sovereign Immunity Act, Wine Vendors maintain that it cannot be read to have expanded sovereign immunity when it only purported to restore sovereign immunity principles that had been abrogated by *Mayle*. *Id*.[30] Wine Vendors note that this Court recognized this continuity in *Dorsey*, 96 A.3d at 342 (observing that the General Assembly had codified the "preexisting immunity scheme"). They contend this restoration salvaged sovereign immunity regarding tort claims but had no effect on mandamus damages that had never been barred by the doctrine. Wine Vendors' Brief at 23. Additionally, Wine Vendors cite examples of mandamus damages awards in the years that followed the enactment of the Sovereign Immunity Act in cases such as *City of Pittsburgh* and *Temple University v. Commonwealth Department of Public Welfare*, 521 A.2d 986 (Pa. Commw. 1987). *Id*. at 23-24.

---

[30] Wine Vendors cite Section 2310, which provides that "it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall **continue** to enjoy sovereign immunity and official immunity and **remain** immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310 (emphasis by Wine Vendors).

Because sovereign immunity has never barred mandamus damages, Wine Vendors advise that there is no conflict between Section 8303 and the Sovereign Immunity Act. Nonetheless, they argue that if we identify a conflict, it should be resolved in line with our analysis in *Dorsey*, in that Section 8303 should be construed as a more specific provision targeting "accountability for state and local agencies" that should prevail over any conflicting language in more general provisions of the Sovereign Immunity Act. Wine Vendors' Brief at 26 n.5.

Next, Wine Vendors argue that Section 8303 should not be strictly construed because the lower court "did not hold that Section 8303 is an 'exception' to sovereign immunity[;] it correctly held that sovereign immunity does not apply to mandamus actions." *Id*. at 27. They maintain that strict construction only applies to claims within the scope of sovereign immunity. *Id*. They point to *Log Cabin*, where the lower court explicitly stated that claims brough pursuant to Section 8303 or its predecessor never "required a waiver" because such actions were "never barred by sovereign immunity in the first place." *Id*. (quoting *Log Cabin*, 276 A.3d at 871). Thus, Wine Vendors contend that the rule requiring strict construction of exceptions to sovereign immunity do not apply to Section 8303. *Id*. at 28. For the same reason, they argue that Section 8521's language that "no provision" of Title 42, outside of the Sovereign Immunity Act, "shall constitute a waiver of sovereign immunity" is inapplicable here because, although Section 8303 is in Title 42, mandamus damages under Section 8303 do not require a waiver as they have never been subject to sovereign immunity. *Id*. at 28 n.6. They contend that to hold otherwise would also call into question the Declaratory Judgment Act, 42 Pa.C.S. §§ 7531-41:

> But no one contends that the absence of a specific statutory waiver of sovereign immunity for declaratory judgment actions means parties cannot bring such actions against the Commonwealth. They do not, as this very case

> demonstrates. Like mandamus actions, declaratory judgment actions do not need a waiver because sovereign immunity never barred them in the first place.

*Id*.

Furthermore, Wine Vendors argue that sovereign immunity does not apply when "agencies [] act outside the scope of their authority." *Id*. at 28. For instance, they point to *Justice v. Lombardo*, 208 A.3d 1057 (Pa. 2019), where "this Court overturned a Commonwealth Court ruling vacating a jury's finding that a state trooper acted outside the scope of his duties (and was therefore not entitled to sovereign immunity) based on evidence that he handcuffed and used force against the plaintiff due to personal animus." *Id*. at 30 (citing *Justice*, 208 A.3d at 1066-67, 1075-76). Wine Vendors fault PLCB for failing to consider the scope-of-authority issue, even though "the concept is repeatedly referenced in the statutes it cites." *Id*. at 31 (citing 1 Pa.C.S. § 2310, 42 Pa.C.S. § 8501). Wine Vendors maintain that by refusing to implement a direct delivery process for special orders long after it was statutorily obligated to do so (as determined in *MFW I*), PLCB is being held to account for actions taken outside the scope of its authority. Thus, even if PLCB "is shrouded in the cloak of sovereign immunity in other contexts or on other sets of facts," Wine Vendors contend that PLCB "has forfeited any immunity here by acting ultra vires and far outside the scope of its duties." *Id*. at 32.

Wine Vendors next contest PLCB's argument that it is not a "person" within the meaning of Section 8303. Initially, they argue that PLCB was already determined to be a "person" when this Court affirmed *MFW I*, because declaratory relief under 42 Pa.C.S. § 7540 is only available against "persons."[31] *Id*. at 33. Therefore, Wine Vendors maintain

---

[31] Section 7540 provides, in pertinent part,

**§ 7540. Parties**

**(a) General rule.--**When declaratory relief is sought, all persons shall be made parties who have or claim any interest

(continued…)

that this "holding is law of the case and precludes PLCB from arguing that Section 8303's use of 'person' is subject to some other definition of PLCB's choosing." *Id*. Moreover, they contend that by routinely holding that Commonwealth agencies are indispensable parties for purposes of declaratory actions when their interests are affected by a declaration, the Commonwealth Court has by default held that Commonwealth agencies are persons for purposes of that provision.[32] Wine Vendors also observe that the Declaratory Judgment Act also uses "person" to define "who is entitled to seek declaratory relief and, thus, if "PLCB or any other Commonwealth agency were not a 'person,' they would never be entitled to seek declaratory relief." *Id*. at 34-35.[33] They argue that the "PLCB cannot have it both ways: it cannot claim to be a 'person' when it wants to bring a declaratory judgment action, then argue it is not a 'person' to avoid paying mandamus damages." *Id*. at 35.

Similarly, Wine Vendors argue that because PLCB concedes that they are entitled to costs, it admits to being a "person" within the meaning of Section 8303. *See* PLCB's

---

which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party and shall be entitled to be heard.

42 Pa.C.S. § 7540.

[32] *See*, *e.g.*, *Pennsylvania State Educ. Ass'n v. Commonwealth, Dep't of Educ.*, 516 A.2d 1308, 1310 (Pa. Commw. 1986) ("A Commonwealth agency whose interest will be affected by a declaration, sought by a plaintiff against another, is an indispensable party."); *Piper Aircraft Corp. v. Ins. Co. of N. Am.*, 53 417 A.2d 283, 285 (Pa. Commw. 1980) ("With particular regard to declaratory judgment proceedings, we have held that a Commonwealth agency whose interest will be affected by a declaration, sought by a plaintiff against another, is an indispensable party.").

[33] *See* 42 Pa.C.S. § 7533 ("Any person … whose rights, status, or other legal relations are affected by a statute … may have determined any question of construction or validity … thereunder.").

Brief at 7 n.4 (conceding Wine Vendors are entitled to costs). Because Section 1726 establishes that only a prevailing "party" may recover costs, *see* 42 Pa.C.S. § 1726, and Section 102 of the Judicial Code defines a "party" in part as a "**person** who commences or against whom relief is sought in a matter," 42 Pa.C.S. § 102 (emphasis added), Wine Vendors contend that PLCB should be estopped from arguing it is not a "person." Wine Vendors' Brief at 36.

Wine Vendors also argue that regardless of whether PLCB is a "person" within the meaning of the SCA, the SCA definitions only apply "**unless** the context clearly indicates otherwise[.]" 1 Pa.C.S. § 1991 (emphasis added).

> The context in which the General Assembly used the word "person" in Section 8303[,] and the context in which it amended the default definition of "person" in 1992— demonstrate that the General Assembly never intended to exclude Commonwealth agencies from the scope of Section 8303's action to recover damages from a defendant in a mandamus action who is "adjudged … to have failed or refused without lawful justification to perform a duty required by law."

Wine Vendors' Brief at 39 (quoting 42 Pa.C.S. § 8303).

Wine Vendors point out that other provisions in the Judicial Code that were codified in the same year as Section 8303 consistently use terms like participant, litigant, and party that incorporate the word "person," such that, if read consistently across the Judicial Code to exclude Commonwealth agencies as a "person," would preclude Commonwealth agencies from recovering costs, counsel fees, or even participating as a party in declaratory judgment actions. *Id*. at 40.

Nevertheless, Wine Vendors also claim that the amendment to the SCA definition of "person," if anything, supports their interpretation, because even before the definition of "person" included "government entity," the courts "routinely authorized" Section 8303 relief. *Id*. Therefore, if the SCA definition is applied to Section 8303, Wine Vendors

contend the SCA definition only excludes the "Commonwealth," while expressly including the term "government entity," as the *MFW II* court held.

Wine Vendors next assail PLCB's reliance on *Meyer II* and *Runion*. They aver that in *Meyer II*,

> this Court considered whether a local government agency could be sued as a "person" under the provision in the [UTPCPL] that authorizes private actions: 73 P.S. § 201-9.2(a). The UTPCPL has its own statutory definition of "person," which includes the phrase "any other legal entities." *Id*. § 201-2(2). This Court held that whether the phrase "any other legal entities" should be construed to include local governmental entities was ambiguous in the context of the UTPCPL—but in light of the prior law, the purpose of the UTPCPL, and the consequences of holding that it applies to governmental agencies, the Court concluded that the General Assembly did not intend the UTPCPL to be applied to local government agencies. [*Meyer II*,] 93 A.3d at 811-15.
>
> Those same considerations show why the General Assembly's use of "person" in Section 8303 clearly did intend it to apply to Commonwealth agencies. First, the prior law was the Mandamus Act, which not only existed outside of sovereign immunity but expressly provided for awards of mandamus damages against Commonwealth defendants. Second, the purpose of a mandamus action and Section 8303 is to hold government entities and officials accountable when they shirk their duties. And third, the consequence of excluding Commonwealth agencies from the reach of Section 8303 is that agencies like PLCB that flout their statutory obligations and persist in collecting fees the General Assembly has mandated they stop collecting will not be held accountable for their conduct.

*Id*. at 45-46. Wine Vendors also contend that *Runion* cannot save PLCB's interpretation, largely in line with the rationale of the lower court in *MFW II*. *Id*. at 46-48.

### Log Cabin

Log Cabin's arguments on the merits also track those raised by Wine Vendors. It contends that PLCB is a "person" under Section 8303 because 1) the law of the case applies, as PLCB did not contest that it was a "person" for purposes of the declaratory

judgment action in *MFW I*, Log Cabin Brief at 31-33; 2) PLCB admitted that it was a "person" by conceding that it owed costs, *id*. at 33-34; 3) the context of Section 8303 makes it clear that PLCB is a person, such that the SCA definition of "person" would not apply to Section 8303 unless the SCA definition includes PLCB, *id*. at 34-41; and 4) *Runion* and *Meyer II* are inapposite, for the same reasons argued by Wine Vendors, *id*. at 42-45.

As to whether sovereign immunity bars mandamus damages under Section 8303, like Wine Vendors, Log Cabin contends that the text of Section 8303 authorizes recovery of mandamus damages, *id*. at 17-18, and that neither the common law nor the current statutory regime governing sovereign immunity has ever barred mandamus damages, *id*. at 19-23. Consequently, Log Cabin maintains that this Court need not strictly construe Section 8303 as an exception to the doctrine to reach the correct result. *Id*. at 24-26. It also argues that sovereign immunity does not apply when a government agency acts outside the scope of its authority, a principle embedded in the Sovereign Immunity Act. *Id*. at 26-30.[34]

### PLCB's Reply[35]

PLCB argues that its concession that sovereign immunity did not apply to the underlying mandamus action in *MFW I* was not an admission that it does not apply to mandamus damages. *Id.* at 6-7. It also contends that there is no waiver of sovereign immunity if PLCB acted outside of its agency authority. *Id.* at 8-11. PLCB accuses Log Cabin and Wine Vendors of conflating "the merits with sovereign immunity" because "if

---

[34] Log Cabin also argues that PLCB "bizarrely spends five pages of its 20-page brief arguing that Log Cabin" is not entitled to attorneys' fees, but "Log Cabin was never awarded fees below." *Id*. at 45. Log Cabin notes that, given the procedural posture of its case, any "award of attorney[s'] fees … would have been premature." *Id*.

[35] PLCB's reply briefs are substantially the same. Thus, we cite to PLCB's reply brief in the appeal from *MFW II* unless otherwise noted.

taken to its logical conclusion, it would mean that any Commonwealth agency that violates a statutory provision is acting outside its authority and sovereign immunity therefore can never apply." *Id.* at 10. Under Appellees' view, PLCB claims, "sovereign immunity could only apply where the plaintiff is unable to prove his case on the merits in the first place." *Id*. PLCB also distinguishes *Justice* on the basis that that case involved an individual officer acting outside the scope of his employment, rather than a state agency generally. *Id.* at 10-11. Finally, PLCB argues that *Runion* and *Meyer II* apply despite Appellees' attempt to distinguish those cases. *Id.* at 11-12.

## Analysis

### Is PLCB a "person" under Section 8303?

We first consider whether PLCB is a "person" within the meaning of Section 8303. If the answer to that question is no, then PLCB is not susceptible to liability for damages in a mandamus action and its immunity from damage claims based on sovereign immunity is not implicated. To interpret the meaning of "person" under Section 8303, we resort to well established principles guiding our interpretation of the meaning of statutes:

> Statutory interpretation is a matter of law, and our standard of review is de novo and our scope of review is plenary. As this case requires us to engage in statutory interpretation, we are mindful of our paramount objective to give effect to the intent of our General Assembly in enacting the particular statute under review. When words of a statute are clear and explicit, we must follow them. It is only when the language is not explicit that we may examine other considerations.

*U.S. Venture, Inc. v. Commonwealth*, 255 A.3d 321, 334 (Pa. 2021) (internal citations and quotation marks omitted).

Section 8303 provides:

**§ 8303. Action for performance of a duty required by law**

A **person** who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification

to perform a duty required by law shall be liable in damages
to the **person** aggrieved by such failure or refusal.

42 Pa.C.S. § 8303 (emphasis added).

"Person" is not defined in the Judicial Code, but it is defined in Section 1991 of the

SCA:

> **§ 1991. Definitions**
>
> The following words and phrases, when used in any statute finally enacted on or after September 1, 1937, unless the context clearly indicates otherwise, shall have the meanings given to them in this section:
>
> * * *
>
> **"Person."** Includes a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person.

1 Pa.C.S. § 1991.

PLCB does not dispute that the SCA definition applies to Section 8303. On its face, that definition includes PLCB as a "government entity" that is not "the Commonwealth." *Id*. PLCB is an agency of the executive branch of the Commonwealth and, thus, is distinguishable from "the Commonwealth" as a whole. *Tork-Hiis v. Commonwealth*, 735 A.2d 1256, 1259 (Pa. 1999) (holding that the Commonwealth and its agencies "are distinct legal entities," such that substituting one for the other in a complaint "amounts to the addition of a new party").[36] Thus, on first glance, PLCB is clearly a "person" under Section 8303, by direct operation of the SCA, unless the "context **clearly** indicates otherwise[.]" 1 Pa.C.S. § 1991 (emphasis added).

PLCB argues that we must avert our eyes from the plain, unambiguous meaning of "person" in the SCA due to our decision in *Runion*. *Runion* asked whether the

---

[36] This not a mere formality; it has a very practical fiscal consequence in cases involving sovereign immunity and exceptions thereto, because "the assets of the [C]ommonwealth are not the same as the assets of any of its agencies." *Tork-Hiis*, 735 A.2d at 1259.

Department of Public Welfare was a "person" under a prior version of 18 Pa.C.S. § 1106, a statute governing restitution for injuries to victims in criminal cases, where "person" was used to define a victim of such crimes.[37] The defendant in *Runion* argued that an award of restitution to the Department of Public Welfare was improper because it "is not a 'victim' in the true sense of the word under 18 Pa.C.S. § 1106." *Runion*, 662 A.2d at 619. Thus, the *Runion* Court was concerned that Section 1106 failed "to specify or provide any guidance as to whether the General Assembly intended to include governmental agencies of this Commonwealth within the definition of a 'victim.'" *Id*. Because the definition of "victim" provided under Section 1106 incorporated the term "person," *Runion* turned to the SCA to define "person" with the explicit purpose of deciding whether a government agency could be considered a person, and therefore a victim under Section 1106. *Runion* concluded that it did not. *Id*.

As correctly determined by the Commonwealth Court in both *MFW II* and *Log Cabin*, *Runion* is not controlling for multiple reasons. Most important among those reasons for our interpretive purposes, *Runion*'s interpretation of the definition of "person" under the SCA contained a patent error which, upon reflection, leaves no room for difference of opinion and must be abandoned.

*Runion* presumed an ambiguity in the definition of "victim," not an ambiguity in the SCA regarding whether a "person" could include a government agency. Seeking to define "victim" after finding that ambiguity, the *Runion* Court strictly construed the term "victim" in the defendant's favor (i.e., against awarding restitution to a government agency). However, it found no ambiguity in the SCA definition of "person," finding that "the Department of Public Welfare, as a Commonwealth entity, is **expressly excluded from**

---

[37] At the time, Section 1106 defined a victim as any "**person**, except an offender, who suffered injuries to his person or property as a direct result of the crime." *Runion*, 662 A.2d at 619.

**the definition of a "person"**, and as such may not be considered as a victim under 18 Pa.C.S. § 1106." *Runion*, 662 A.2d at 621 (emphasis added). *Runion* justified that conclusion on the following rationale: "The definition of 'person' as found in the Statutory Construction Act was amended in 1992, in part, to exclude government entities of the Commonwealth." *Id.* at 621 n.4. This is a misstatement of the 1992 SCA Amendment.

Prior to 1992, the SCA defined "person" without any reference to the Commonwealth or its subdivisions. It provided: "'**Person.**' Includes a corporation, partnership, and association, as well as a natural person." 1 Pa.C.S. § 1991 (amended 1992). In 1992, the General Assembly amended the definition to read as follows: "'**Person.**' Includes a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person." 1 Pa.C.S. § 1991 (as amended).

As the Commonwealth Court correctly ascertained, the General Assembly added "government entity" to the definition of "person," while simultaneous excluding "the Commonwealth." Thus, the *Runion* Court unquestionably misread the amendment to the SCA definition of "person" as doing precisely the opposite of what it actually did. We will not perpetuate this obvious error and, thus, we overrule *Runion* for its interpretation of the definition of "person" in the SCA.[38]

We also reject the notion that strict construction principles apply in these appeals to our interpretation of "person" under the SCA, as we do not apply that interpretative principle in contravention to the unambiguous language of a statute. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under

---

[38] Moreover, *Runion* has been superseded by statute. *See Commonwealth v. Hall*, 80 A.3d 1204, 1215 (Pa. 2013). In *Hall*, this Court recognized that "the General Assembly amended Section 1106 to expand the class of entities eligible for restitution" to include "a 'government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct' as a proper recipient along with the victim himself." *Id*.

the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Rather, "the best expression of the General Assembly's intent is found in the statute's plain language." *Commonwealth v. Coleman*, 285 A.3d 599, 605 (Pa. 2022) (internal citations and quotation marks omitted). There is no ambiguity in the General Assembly's inclusion of "government entities" under the definition of "person" in Section 1991 of the SCA.

PLCB's reliance on *Meyer II* to demonstrate that it is not a "person" within the meaning of Section 8303 is also unconvincing. In *Meyer II*, we considered whether a community college could be sued for unfair trade practices under the UTPCPL, which provides "a private cause of action for 'persons' injured by other 'persons' employment of unfair trade practices." *Meyer II*, 93 A.3d at 808. While that superficially suggests similarity to the instant matter in that *Meyer II* revolved around whether a government entity constituted a "person" that could be sued in contravention to sovereign immunity principles, the comparison ends there. The UTPCPL contains its own definition of "person" that does not explicitly include government entities, but instead defines the term as including "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and **any other legal entities**." 73 P.S. § 201-2(2) (emphasis added). In *Meyer II* we addressed whether "any other legal entities" included "political subdivision agencies" because "they are not specifically enumerated in the definition." *Meyer II*, 93 A.3d at 813. Considering the contrasting interpretations offered by the litigants, we determined that the UTPCPL definition of "person" was ambiguous as to whether it included a political subdivision like a community college, and so we turned secondary interpretative principles. *Id*. at 814.

First, we determined that under the common law at the time of the UTPCPL's adoption, sovereign immunity would have generally applied to suits that involved depriving the Commonwealth of property, and that it was unlikely that the General

Assembly intended to make an exception to sovereign immunity through language as general and vague as "other legal entities." *Id*. Second, we noted that the legislative purpose behind the UTPCPL was to protect buyers from "exploitative merchants[,]" not to "eliminate unfair trade practices in the public sphere." *Id*. Third, the *Meyer II* Court observed that the UTPCPL permitted recovery of damages for "remedial purposes" but also contained a "deterrent, punitive element" that was inconsistent "given our longstanding precedent that governmental agencies are ordinarily immune from common-law punitive damages." *Id*. at 815. Finally, the UTPCPL permitted the Attorney General in some circumstances to seek the "dissolution, suspension or forfeiture of the franchise or right to do business" which, if applied to government entities, would absurdly authorize "the Attorney General, with court approval, to eliminate political subdivisions." *Id*. In light of the ambiguity in the UTPCPL definition of "person," we held in *Meyer II* the General Assembly "did not intend for the definition of 'person' to include political subdivision agencies" in that context. *Id*.

PLCB contends that *Meyer II* expresses the importance of considering the historical applications of sovereign immunity when considering whether a statute purports to create causes of action that affect public coffers without expressly waiving sovereign immunity, and that is true enough. However, *Meyer II* was interpreting the UTPCPL definition of "person" applicable only to the UTPCPL, which is distinct from the SCA definition applicable to Section 8303 in the most critical sense—the UTPCPL definition makes no reference to government entities at all. Critically, in *Meyer II*, our statutory interpretation began by identifying an ambiguity as to whether the UTPCPL definition included government entities, whereas there is no ambiguity in Section 1991's inclusion of government entities. Thus, *Meyer II* does not inform our interpretation of definition of "person" applicable to Section 8303.

For the final stage of our textual analysis, having found that the plain meaning of "person" under the SCA includes the PLCB, we return to the question of whether "the context clearly indicates otherwise[.]" 1 Pa.C.S. § 1991. It does not.

Section 8303 provides that a "person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal." 42 Pa.C.S. § 8303. The term "mandamus" is defined as a "writ issued by a court to compel performance of a particular act **by a lower court or a *governmental officer or body***, usu[ally] to correct a prior action or failure to act." *Mandamus*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Thus, a "person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law" will target a government entity, official, or employee, with few exceptions.[39] There is no reason to discard the definition of "person" in the SCA where the context of its use in Section 8303 convincingly supports, rather than refutes, that it was intended to target government entities. Thus, PLCB is a "person" subject to mandamus damages under Section 8303.

### Sovereign Immunity

Having concluded that PLCB is a "person" susceptible to damage claims under Section 8303, the question remains whether Section 8303 conflicts with the Sovereign Immunity Act. PLCB maintains that Section 8303 necessarily conflicts with the Sovereign Immunity Act if it is a person subject to mandamus damages. We disagree that such a conflict exists as the history of the doctrine of sovereign immunity in this Commonwealth

---

[39] Pa.R.C.P. 1094(b) also contemplates a mandamus action against "a corporation or similar entity." However, there are relatively few cases in Pennsylvania addressing such actions as compared to those involving government entities, making the former an exception that proves the general rule that the most common understanding of mandamus actions involves government entities that perform public duties.

establishes. For 131 years, Commonwealth agencies have been liable for damages in mandamus and sovereign immunity has not been a defense to the award of such damages.

PA. CONST. art. I, § 11 provides:

> **§ 11. Courts to be open; suits against the Commonwealth**
>
> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. **Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.**

Pa. CONST. art. I, § 11 (emphasis added). Despite the clarity of the last sentence of Section 11 investing the legislature with the authority to set the parameters of sovereign immunity, for centuries it was this Court that exercised the authority through the common law. The concept of sovereign immunity derives from the ancient maxim, "the King can do no wrong."[40] It resides in Section 11 alongside the dissonant principle that for every injury done, there shall be a remedy by due course of law. This dissonance and this Court's historic retention of the doctrine of sovereign immunity was the subject of internal court debate[41] ultimately resolved in the Court by *Mayle* in 1978.

---

[40] In *Mayle*, this Court observed:

> The most popular theory of the origin of sovereign immunity of the American states is that it is a carryover from the English doctrine that "the King can do no wrong." Although this maxim may originally have been a misstatement of the early English law, by the time of Henry III (mid-13th Century), it was settled feudal law that the King could not be sued in his own courts without his consent.

*Mayle*, 388 A.2d at 710.

[41] Eleven years prior to *Mayle*, Justice Michael Musmanno dissented from this Court's retention of the doctrine of sovereign immunity in a case involving a school district's negligence in protecting its students' safety. Referencing his past attempt to "bury this (continued…)

In *Mayle*, we held that Article I, Section 11 "does not forbid judicial abrogation of the doctrine" and "abolish[ed] the doctrine of sovereign immunity and overrule[d] all inconsistent cases." *Mayle*, 388 A.2d at 716, 720. The *Mayle* Court rejected several classic arguments for retention of the doctrine as "obsolete" or never accepted in Pennsylvania, *id*. at 716, and it dismissed modern justifications for sovereign immunity premised on the protection of public coffers as overblown, *see id*. at 714 (stating "the information before us suggests that making governments liable for their torts will not substantially raise the costs of government or upset governmental financial stability").

---

legal charlatanry in the grave of its discredited monarchial grandsires[,]" he opined: "This Court, then as today, seemed to believe that it is enough to say 'sovereign immunity' and all the processes of law and of man's brain will stop functioning as if in the terrified presence of a charging lion." *Husser v. Sch. Dist. of Pittsburgh*, 228 A.2d 910, 912 (Pa. 1967) (Musmanno, J., dissenting) (quoting *Boorse v. Springfield*, 103 A.2d 708, 714 (Pa. 1954) (Musmanno, J., dissenting)). Justice Musmanno was persistent in expressing his distaste for the doctrine. *See id*. (lamenting the "the archaic, unsportsmanlike, reason-defying, bizarre, self-stultifying, monumentally unjust, cruel, brutal, undemocratic piece of pedantical nonsense known as sovereign immunity.").

Former Chief Justice Samuel Roberts, who shared his first five years on this Court with Justice Musmanno, carried the crusade against sovereign immunity forward, culminating with his authorship of *Mayle*. He signaled what was soon to come while writing the Opinion in Support of Reversal in *Tarantino v. Allentown State Hosp.*, 351 A.2d 247, 248 (1976), in which an equally-divided court affirmed the application of sovereign immunity by the Commonwealth Court. *See Tarantino*, 351 A.2d at 248 ("As on every other occasion when this Court has reaffirmed the doctrine of sovereign immunity, depriving citizens of the Commonwealth of their day in court, I disagree.") (joined by Nix & Manderino, JJ.). The previous year, Justice Roberts wrote in dissent that "the doctrine of sovereign immunity ought, in its entirety, to be consigned to the judicial scrapheap[.]" *McCoy v. Commonwealth Liquor Control Bd.*, 326 A.2d 396, 397 (Pa. 1974); *see also Sweigard v. Pennsylvania Dep't of Transp.*, 309 A.2d 374, 376 (Pa 1973) ("The majority again allows a judicially-created anachronism to deprive a litigant of his day in court.") (Roberts, J., dissenting) (joined by Nix & Manderino, JJ.), *Brown v. Commonwealth*, 305 A.2d 868, 871 (Pa. 1973) ("[T]here is no rational reason why the majority could not and should not now judicially abrogate the doctrine of sovereign immunity in toto[.]") (Roberts, J., dissenting) (joined by Nix & Manderino, JJ.), *Biello v. Pennsylvania Liquor Control Bd.*, 301 A.2d 849, 854 (Pa. 1973) ("I believe that the language of the Constitution itself fails to provide any basis for the majority's assumption that in Pennsylvania [sovereign] immunity is constitutionally mandated.") (Nix, J., dissenting) (joined by Roberts, J.).

Furthermore, the *Mayle* Court recognized:   "Three times in recent years we have repudiated as unfair similar status-based immunities of parties."  *Id*. at 710.[42]

In reaction, two months after *Mayle* was decided in 1978, the General Assembly enacted Section 2310:

### § 2310. Sovereign immunity reaffirmed; specific waiver

Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.   When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa.C.S. § 2310.

Having reaffirmed sovereign immunity as a legislative preference, the General Assembly enacted the Sovereign Immunity Act in 1980 to define its application.   The Sovereign Immunity Act provides, in pertinent part, as follows:

### § 8521. Sovereign immunity generally

**(a) General rule.--**Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

**(b) Federal courts.--**Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal

---

[42]  *Ayala v. Philadelphia Bd. of Pub. Educ.*, 305 A.2d 877 (Pa. 1973) (abolishing local government immunity); *Falco v. Pados*, 282 A.2d 351 (Pa. 1971) (abolishing parental immunity); *Flagiello v. Pennsylvania Hosp.*, 208 A.2d 193 (Pa. 1965) (abolishing immunity of charities).

courts guaranteed by the Eleventh Amendment to the Constitution of the United States.

**§ 8522. Exceptions to sovereign immunity**

**(a) Liability imposed.--**The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

**(b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

> **(1) Vehicle liability.**
>
> * * *
>
> **(2) Medical-professional liability.**
>
> * * *
>
> **(3) Care, custody or control of personal property.**
>
> * * *
>
> **(4) Commonwealth real estate, highways and sidewalks.**
>
> * * *
>
> **(5) Potholes and other dangerous conditions.**
>
> * * *
>
> **(6) Care, custody or control of animals.**
>
> * * *
>
> **(7) Liquor store sales. --**The sale of liquor at Pennsylvania liquor stores by employees of the Pennsylvania Liquor Control Board created by and operating under the act of April 12, 1951 (P.L. 90, No. 21), known as the "Liquor Code," if such sale is made to any minor, or to any person visibly intoxicated, or to any insane person, or to any person known as an habitual drunkard, or of known intemperate habit.

**(8) National Guard activities.**

* * *

**(9) Toxoids and vaccines.**

* * *

**(10) Sexual abuse.**

* * *

42 Pa.C.S. §§ 8521-8522 (footnote omitted).

Because Section 8521 provides that the only waivers to sovereign immunity under Title 42 occur within the Sovereign Immunity Act,[43] and because Section 8303, which is housed in Title 42, does not appear in the list of waivers in Section 8522(b), PLCB contends that Section 8303 "is a general provision which does not specifically address or provide for the waiver of sovereign immunity." PLCB's Brief at 16. PLCB's argument is analogous to the rationale we rejected in *Meyer v. Community College of Beaver County*, 2 A.3d 499 (Pa. 2010) ("*Meyer I*"), with regard to the Political Subdivision Tort Claims Act ("Tort Claims Act") (recodified as 42 Pa.C.S. §§ 8541-8542).

Similar to Section 8321, Section 8521 of the Tort Claims Act states: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Also, like Section 8322(b), Section 8542(b) provides a list of exceptions to the general rule of local agency immunity. *Meyer I* involved the same underlying UTPCPL claim at issue in *Meyer II*. In *Meyer I*, the

---

[43] We note that the General Assembly has also reaffirmed sovereign immunity with respect to government contracts under the Procurement Code and then waived that immunity in limited circumstances. *See* 62 Pa.C.S. § 1702(a) (reaffirming sovereign immunity); *id.* § 1702(b) (waiving sovereign immunity "as a bar to claims against Commonwealth agencies brought in accordance with sections 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies) and Subchapter C (relating to Board of Claims) but only to the extent set forth in this chapter") (footnote omitted).

Commonwealth Court had held that "governmental immunity extends to all statutory causes of action, whether arising in tort or contract, subject only to the eight exceptions enumerated in the … Tort Claims Act." *Meyer I*, 2 A.3d at 500. We disagreed, holding that "governmental immunity does not extend to all statutory causes of action, regardless of whether they sound in tort or contract." *Id*. at 503. We reasoned that, in "line with the extant understanding of the … Tort Claims Act, we believe the Legislature centered the immunity there conferred on 'injury to a person or property' as a reflection of traditional tort jurisprudence[,]" and that "by suggesting that the Tort Claims Act impairs the enforceability of contractual relationships with the government, the Commonwealth Court's holding may have unintended effects which are best to be avoided." *Id*. at 502-03.

As we later explained in *Dorsey*, "[a]t its core, … *Meyer* eschewed a rote approach to determining immunity." *Dorsey,* 96 A.3d at 341. In *Dorsey*, the administratrix of the decedent's estate sued the county register of wills and its surety, arguing that the register had improperly granted letters of administration to a third party without securing bonding as required under the PEF Code. *Id*. at 335. At issue in *Dorsey* was whether the 1980 Tort Claims Act immunized the Register of Wills from suit under Section 3172 of the Probate, Estates and Fiduciaries Code ("PEF Code"), 20 Pa.C.S. § 3172 (effective July 1, 1972).[44] *Id*. at 336. We found in *Dorsey* that the "tort/contract construct" was not "necessarily appropriate in all questions of immunity." *Id*. at 341. "[E]mploying only the cannons of statutory construction," we held "that Section 3172 of the PEF Code creates a targeted form of accountability resting outside of the scope of governmental and official immunity." *Id*.

---

[44] Section 3172 of the PEF Code states: "If any register shall grant letters without having taken such bond as is required by law, he and his surety shall be liable to pay all damages which shall accrue to any person by reason thereof." 20 Pa.C.S. § 3172.

In reaching that conclusion, this Court observed that "Section 1933 of the SCA provides that, in the event of a conflict, a specific provision (Section 3172 imposing liability on the register specifically) governs over the more general provision (Section 8545 providing immunity from damages generally)." *Id*. at 342. However, at the same time, "Section 1936 of the SCA provides that later enacted statutes should generally control over earlier, conflicting statutes." *Id*. But the later-in-time rule was subject to the caveat under Section 1933 that specific statutes govern over conflicting general statutes unless "it shall be the manifest intention of the General Assembly that such general provision shall prevail." *Id*. (quoting 1 Pa.C.S. § 1933). Resolving that question, we reasoned that

> the enactment in 1980 of the Tort Claims Act was in response to our Court's abolition of the common law doctrines of governmental and sovereign immunity in the mid–1970s. Indeed, common law immunity was in full force and effect in 1970 when the liability provision for registers was enacted. It seems highly unlikely that, at the same time the General Assembly was codifying the preexisting immunity scheme which our Court abolished, the legislature also aimed to silently undermine a particularized form of liability protection of estate assets which was previously on the books and coexisted with common law immunity.

*Id*. at 342 (citations omitted).

The rationales of *Meyer* and *Dorsey* align with the Commonwealth Court's holdings below, best encapsulated in *Log Cabin*. Therein, the lower court explained that while the Sovereign Immunity Act superseded *Mayle*'s abolition of sovereign immunity, it did not purport to create a wholly new sovereign immunity doctrine but had, instead, returned to the status quo that existed prior to *Mayle*. Under the common law framework in which Section 8303 was adopted, sovereign immunity never barred mandamus damages. *Log Cabin*, 276 A.3d at 871. Thus, while PLCB is correct insofar as Section 8303 is not a specific waiver of immunity as contemplated under 1 Pa.C.S. § 2310 and the Sovereign Immunity Act, that conclusion does not decide this matter under the framework of analysis

this Court established in *Meyer I* and *Dorsey*, which mandate a conclusion contrary to the PLCB's position.

First, unlike tort actions, mandamus actions were never prohibited by sovereign immunity before or after the Sovereign Immunity Act. *See Dombrowski v. City of Philadelphia*, 245 A.2d 238, 241 (Pa. 1968) (observing that even before the Mandamus Act of 1893, "a private litigant" was permitted to "maintain a mandamus action to enforce a public duty when that plaintiff has an individual and beneficial interest in the litigation independent of that which is held by the public at large). Within that milieu, Section 16 of Mandamus Act of 1893, on which Section 8303 is based,[45] explicitly provided for damages in successful mandamus actions: "If a verdict is found for the plaintiff and judgment is entered thereon, … he **shall** recover his damages and costs." Act of June 8, 1893, P.L. 345, § 16, *repealed by* the Act of April 28, 1978, P.L. 202.

We addressed damages under the Mandamus Act of 1893 in *Langan v. School District of Pittston*, 6 A.2d 772 (Pa. 1939), where a teacher "instituted mandamus proceedings to compel the school directors of the City of Pittston to restore her teaching contract." *Langan*, 6 A.2d at 773. Although the school district asserted that the teacher could not recover damages because they were not pled in her mandamus complaint, this Court held that no such pleading was required because "of the peculiar nature of mandamus proceedings and the fact that until the writ issued damages would not be ascertained." *Langan*, 6 A.2d at 774. We noted in *Langan* that the damages provision of the Mandamus Act of 1893 was "much the same as" those set forth in the Act of June 14, 1836, P.L. 621. Indeed, Section 24 of the Act of June 14, 1836 provided that when a writ of mandamus issued, the successful litigant "shall recover his damages and costs, in the

---

[45] The Bar Association's Comment to Section 8303 states that Section 8303 was "[s]ubstantially a reenactment" of Section 16 of the Mandamus Act of 1893. 42 Pa.C.S. § 8303 (Bar Association Comment).

same manner as he might have done in an action for a false return[.]" Act No. 174 of June 14, 1836, P.L. 621, § 24.

Section 8303 came into effect approximately three weeks before *Mayle* was decided in July of 1978.[46] Thus, for at least 142 years prior to *Mayle*, mandamus damages were available and coexisted with a wide-ranging sovereign immunity doctrine under the common law.[47] This is strong historical evidence that the Sovereign Immunity Act was not intended to eliminate the remedy the General Assembly provided in Section 8303, just as was the case in *Dorsey* regarding Section 3172 of the PEF.[48]

Second, the text of both Section 2310 and the Sovereign Immunity Act demonstrate that they were not intended to undermine the historical application of

---

[46] Act of July 9, 1976, P.L. 586, No. 142 (effective June 27, 1978).

[47] Under the Act of 1836, the Supreme Court's mandamus power was extended to the courts of Common Pleas, limited to actions against "all officers and magistrates, elected or appointed, in or for the respective county, or in or for any township, district, or place within such county, and to all corporations, being or having their chief place of business within such county." Act No. 174 of June 14, 1836, P.L. 621, § 18. Pursuant to the Mandamus Act of 1893, that power was extended to apply to Commonwealth entities. *See* Act of June 8, 1893, P.L. 345, § 1 (stating a court of Common Pleas "of the county in which the government is or may be located" has the power and duty to issue the writ of mandamus "to the Lieutenant Governor, Secretary of the Commonwealth, Attorney General, Secretary of Internal Affairs, Superintendent of Public Instruction, State Treasurer, Auditor General, Insurance Commissioner, and Commissioner of the Sinking Fund"). However, the mandamus power has always been accompanied by a right to recover damages.

[48] Moreover, in the immediate aftermath of *Mayle*, between the General Assembly's adoption of Section 2310 and the Sovereign Immunity Act, this Court decided *City of Pittsburgh*. In *City of Pittsburgh*, this Court addressed a mandamus action between PennDOT and the City of Pittsburgh, filed under the Mandamus Act of 1893, in which PennDOT was ordered to pay mandamus damages to the City of Pittsburgh. *City of Pittsburgh*, 416 A.2d at 463. PennDOT refused to pay interest on that sum premised on a sovereign immunity defense, but this Court held that it was obligated to do so. *Id*. at 465. Although the analysis in that case revolved around whether interest was barred by sovereign immunity, it was simply presumed that there was no sovereign immunity problem with the underlying award of mandamus damages.

sovereign immunity in this Commonwealth, but instead to resurrect the doctrine (albeit legislatively) to its pre-*Mayle* status. In the heading to Section 2310, the General Assembly expressed that it "reaffirmed" the doctrine of sovereign immunity. 1 Pa.C.S. § 2310 (heading).[49] Later in Section 2310, the legislature stated that the "Commonwealth … shall **continue to** enjoy sovereign immunity" except where there is a specific waiver. *Id.* (emphasis added). The Generally Assembly's use of the terms "reaffirmed" and "continue to" in Section 2310 is meaningless unless understood in the historical context in which sovereign immunity applied. Our rules of statutory construction do not permit us to read that phrase out of the statute as surplusage, and our duty is instead to give it meaning if possible. 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Thus, Section 2310 did not apply to mandamus damages unless they were previously barred under the doctrine of sovereign immunity before this Court decision in *Mayle*. As established above, mandamus damages were never barred by sovereign immunity before *Mayle*.

Nothing in the Sovereign Immunity Act undermines this understanding that it was intended to reinstitute the pre-*Mayle* contours of the doctrine rather than replace it. The Sovereign Immunity Act specifically references 1 Pa.C.S. § 2310 as its premise. *See* 42 Pa.C.S. § 8521. As this Court has previously stated, "[i]n § 8521(a) of the Act, the legislature **reinstated** the doctrine as a **general rule**." *Jones v. Se. Pennsylvania Transp. Auth.*, 772 A.2d 435, 439 (Pa. 2001) (emphasis added). Furthermore, the use of the term "waiver" throughout the Sovereign Immunity Act is consistent with this construction. A waiver is the "voluntary relinquishment or abandonment — express or implied — of a legal right or advantage[.]" *Waiver*, BLACK'S LAW DICTIONARY (11th ed. 2019). The term

---

[49] "The title and preamble of a statute may be considered in the construction thereof." I Pa.C.S. § 1924.

"waiver" implies that the legal right had previously existed, or else there would be nothing to waive. If mandamus damages were never barred by sovereign immunity, there would be no logical reason for the General Assembly to specifically waive the application of sovereign immunity to such damages.

Third, Section 8522, where the specific waivers occur, addresses claims "for damages arising out of a **negligent act** where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. § 8522(a) (emphasis added). The implication is clear. The Sovereign Immunity Act's focus is on tort claims involving negligent acts by state actors, which is consistent with list of specific waivers set forth in Section 8522(b), just as the Tort Claims Act was focused on actions arising in tort in *Meyer I*. A cause of action for mandamus damages is categorically different from a cause of action in tort, the primary focus of Section 8522. Mandamus actions are not directed toward tortious acts or negligence. They target damages incurred as a direct result of the failure to act when compelled to do so by a public duty.

Fourth, much like Section 3172 of the PEF Code, Section 8303 is a more-specific accountability provision that prevails over the later-in-time Sovereign Immunity Act, as there is no "manifest intention of the General Assembly that such general provision shall prevail." 1 Pa.C.S. § 1933. Nothing in the text of Section 2310 or the Sovereign Immunity Act indicates the General Assembly's intent to "silently undermine a particularized form of liability … which was previously on the books[.]" *Dorsey,* 96 A.3d at 342.

Finally, we ascertain no other public policy consideration that would suggest that Section 8303 damages require a specific waiver under the Sovereign Immunity Act. Mandamus provides a narrow and limited legal remedy. At its core is the principle that, in a democratic system of self-governance, there must be accountability of public officials

and entities who refuse to fulfill their duties as provide by law, by either act or omission. Mandamus damages under Section 8303, narrowly directed to address the direct result of a failure to perform a public duty, reinforce the accountability principle inherent in the mandamus power, and do not offend any principles of sovereign immunity that were preserved in the Sovereign Immunity Act.

### *Attorneys' Fees*

Finally, we address PLCB's assertion that Wine Vendors' claim for attorneys' fees are also barred by sovereign immunity. PLCB's argues this is because Wine Vendors' claim for mandamus damages lacks legal justification, the claim for attorneys' fees is also not cognizable. As we have determined that mandamus damages under Section 8303 are not barred by sovereign immunity, this defense to the claim of attorneys' fees lacks merit.[50]

---

[50] PLCB argues in the alternative that, even if mandamus damages are not barred by sovereign immunity, they are not otherwise available because Wine Vendors' have not demonstrated that PLCB engaged in arbitrary, dilatory, obdurate, and/or vexatious conduct under 42 Pa.C.S. § 2503. PLCB's Brief at 19-23. PLCB's arguments in this regard are well-beyond the question it presented for review, which is "[w]hether Section 8303 of the Judicial Code … creates an exception to sovereign immunity in actions seeking damages, costs, interest, and attorneys' fees against Commonwealth agencies?" PLCB's MFW Brief at 4.

Furthermore, in *MFW II*, the Commonwealth Court stated: "Based on the foregoing, Petitioners' Damages Application is granted. **However**, PLCB is hereby permitted to undertake discovery and/or request a hearing limited to Petitioners' damages and interest, and MFW's and A6's attorneys' fees." *MFW II*, 276 A.3d at 1241 (emphasis added). As PLCB acknowledges in its brief, the "Commonwealth Court's May 27, 2022 order did not dispose of all claims as it contemplated further action by the court to determine the amount of damages, costs, interest, attorneys' fees to be assessed." PLCB's Brief at 9.

On June 16, 2022, PLCB filed a request for a hearing on damages. Request for Hearing on Damages, 6/16/2022. It subsequently filed its timely notice of appeal to this court on June 22, 2022, before any such hearing was held. Hence, any issues regarding the merits of a prospective award of attorneys' fees are premature and should be addressed in the pending proceedings below.

**Conclusion**

For the reasons set forth above, we hold PLCB is a "person" within the meaning of 42 Pa.C.S. § 8303, and that sovereign immunity does not bar mandamus damages sought pursuant to that provision.

Chief Justice Todd and Justices Dougherty, Wecht and Mundy join the opinion.

Justice Brobson did not participate in the consideration or decision of this matter.